Sammye R. HOLLOWAY,
Plaintiff–Appellant,

v.

State of OHIO; Ohio Department of Human Services; Sally Brush; Clermont County, Ohio, Defendants–Appellees.

No. 96–3732.

United States Court of Appeals,
Sixth Circuit.

Argued April 30, 1998.

Decided June 3, 1999.

Anita M. Bechmann (argued and briefed), Cincinnati, Ohio, for Plaintiff–Appellant.

Christopher T. Carlson (argued and briefed), Office of the Attorney General of Ohio, Health & Human Services Section, Columbus, Ohio, for Defendant–Appellee Ohio Department of Human Services, Child Care Regulatory Unit.

Helen E. Mason (argued and briefed), Clermont County Prosecuting Attorney, Batavia, Ohio, for Defendants–Appellees Sally Brush and Clermont County, Ohio.

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

CLAY, J., delivered the opinion of the court, in which DAVID A. NELSON, J., joined. BOGGS, J. (pp. 448–53), delivered a separate opinion concurring in part and dissenting in part.

CLAY, Circuit Judge.

Plaintiff, Sammye R. Holloway, appeals from the order entered by the United States District Court for the Southern District of Ohio granting Defendants' motion for summary judgment in this case alleging, among other things, violation of Plaintiff's civil rights in relation to the ter-

mination of her parental rights by the Clermont County, Ohio Juvenile Court. For the reasons set forth below, the district court's order is **AFFIRMED**.

## I.

### *Procedural Background*

Plaintiff filed this action *pro se* under 42 U.S.C. § 1983 on March 17, 1994, claiming that Defendants[1] had deprived her of children without due process of law in violation of the Fourteenth Amendment; that Defendants had conspired to violate her civil rights; and that their actions violated her rights under the Sixth and Eighth Amendments. Defendants filed motions to dismiss, and the magistrate issued a report finding that 1) the court had jurisdiction over Plaintiff's § 1983 claims; 2) Plaintiff failed to state a claim for relief as to the conspiracy to violate her rights under § 1983; 3) Plaintiff failed to state a claim for relief under the Sixth and Eighth Amendments; and 4) Plaintiff's claims for money damages against the State of Ohio and the Ohio Department of Human Services were barred by the Eleventh Amendment. The magistrate recommended that the State and the Ohio Department of Human Services' motion to dismiss be granted, and that Clermont County and Sally Brush's motion to dismiss for lack of jurisdiction and failure to state a claim be denied.

Subsequently, an order was issued directing Plaintiff to show cause why the court should not *sua sponte* issue summary judgment on the basis that the remaining parties were entitled to immunity. Based upon Plaintiff's response, an order was issued to Clermont County and Brush to provide evidence of the notice of hearing to terminate Plaintiff's parental rights which Clermont County allegedly had attempted to be served upon Plaintiff. Clermont County and Brush were also ordered to brief the issue of their entitlement to immunity.

Clermont County and Brush provided evidence of notice to Plaintiff by way of publication, and briefed the issue of immunity. In addition, they filed a motion for summary judgment, and, thereafter, an order was entered granting summary judgment to both parties on the basis of absolute immunity. It is from this order that Plaintiff now appeals.

### *Facts*

Plaintiff alleged that in November of 1988, her husband threw her out of their home in Oklahoma and left the state with their two minor sons. Plaintiff allegedly commenced a several years long search throughout the United States for her children. In 1990, Plaintiff's children had been living with their father in Clermont County. Subsequently, the Clermont County Department of Human Services ("CCDHS") became involved with the children after receiving a report that they were not being properly cared for by Plaintiff's husband. On November 28, 1990, CCDHS filed a complaint for temporary custody of the children. Defendants sent notice of the Complaint for Temporary Custody to Plaintiff via certified mail to the last known address given by Plaintiff's husband in Phoenix, Arizona. The notice was returned to Defendants under the directive that no such person lived at that address. Defendants attempted to serve Plaintiff by publication using the Phoenix address as the last known address. Temporary custody of the children was granted to CCDHS inasmuch as the court found that the children were living in unhealthy and unsanitary conditions.

After receiving temporary custody of the children, CCDHS filed a case plan with the Clermont County Juvenile Court

---

1. Plaintiff named the State of Ohio, the Ohio Department of Human Services, Sally Brush (a social worker employed by Clermont County), and Clermont County, Ohio as defendants in this case. On appeal, Plaintiff only challenges the dismissal of Sally Brush and Clermont County from suit, although all Defendants were ultimately dismissed.

("CCJC"). In March of 1992, Brush, a caseworker for Clermont County Child Protective Services, took over the children's case. It was Brush's job to monitor the success of the case plan and, pursuant to statute, make a recommendation to the CCJC regarding the progress of Plaintiff's husband in accomplishing the goals of the case plan. Because Plaintiff's husband was unable to demonstrate any progress toward the goals, CCDHS filed a petition on September 21, 1992 with the CCJC requesting permanent custody of the children, and the matter was set for trial. Defendants published notice to Plaintiff in the *Clermont Sun* newspaper; however, the published notice failed to state Plaintiff's last known address. On November 4, 1992, Brush filed an affidavit with the CCJC in which she stated that she had been unable to obtain a current address for Plaintiff. Brush had attempted to locate Plaintiff by telephoning social service agencies in Arizona, Washington, Oklahoma, California, and Colorado.

A hearing was held where it was recommended that CCDHS retain permanent custody of the children, and thereafter the children were placed with relatives of Plaintiff's husband in the State of Washington. This placement was not successful, and Defendants filed a motion for permanent custody of the children. Defendants sent notice of the motion for permanent custody to Plaintiff at the Phoenix, Arizona address, and attempted to serve Plaintiff via publication as previously done. After receiving a letter from Plaintiff inquiring about her children, the State of Washington contacted Defendants and informed them that Plaintiff was searching for her children. The State of Washington also informed Plaintiff that her children were in Clermont County.

A hearing was then held before a referee on December 15, 1992. The referee recommended that CCDHS be awarded permanent custody of the children, finding by clear and convincing evidence that this was in the best interests of the children. On June 16, 1993, the trial court affirmed the referee's report in its entirety.

On May 20, 1993, Plaintiff contacted Brush by letter asking that Brush put her children on an airplane and send them to Kansas where Plaintiff was then living. Brush telephoned Plaintiff the following day, informed her of the status of her children's case, and suggested that Plaintiff obtain legal counsel. By letter dated June 2, 1993, addressed to Plaintiff in Kansas, Brush confirmed the contents of her call. Plaintiff alleges that during the May 21, 1993, telephone conversation, Brush told Plaintiff that her parental rights had already been terminated.

In May of 1993, Plaintiff sent a letter to the governor of the state of Ohio explaining her situation. She received a reply letter dated June 21, 1993, informing her that her children were doing fine and were happy. The letter also provided a name and telephone number of a contact person for Plaintiff to reach for information about the children.

Assistant prosecutor for the County, Thomas Flessa, wrote Plaintiff a letter on June 18, 1993, informing her that her children were in the permanent custody of the CCDHS, that the plan was to seek an adoptive home(s) for children, and suggested that Plaintiff seek the assistance of an attorney in regard to her legal rights. Thereafter, Plaintiff began filing a series of lawsuits against Defendants in the United States District Court in Kansas, the United States District Court in Ohio.

Plaintiff filed a *pro se* motion on February 15, 1995 in the CCJC, requesting that the court review the case and reverse its prior order granting CCDHS permanent custody of the children. On August 22, 1995, the court overruled Plaintiff's motion and Plaintiff appealed to the Ohio Twelfth District Court of Appeals. The court of appeals issued an opinion on May 5, 1996, reversing the lower court's decision, finding that service by publication upon Plain-

tiff was defective and that the trial court had not obtained jurisdiction over Plaintiff for purposes of the custody proceedings. This opinion is not included in the Joint Appendix to this appeal; however, Plaintiff included a copy of the opinion as an addendum to her brief. Defendants filed a motion to strike this opinion from Plaintiff's brief, as well as several statements Plaintiff made in her Statement of Facts in reference to this opinion.

Clermont County failed to act to obtain jurisdiction over Plaintiff or to otherwise cooperate to resolve the matter, and Plaintiff filed for habeas corpus relief in the Ohio Twelfth District Court of Appeals. The court of appeals denied the habeas relief; Plaintiff appealed the court's decision to the Ohio Supreme Court, and her appeal was pending at the time the briefs in this case were filed.

## II.

### *Analysis*

#### A.

Plaintiff argues that the district court erred in granting Clermont County and Brush summary judgment on the basis of absolute immunity with respect to Plaintiff's § 1983 claim for violation of Plaintiff's right to due process under the Fourteenth Amendment on the basis that Clermont County and Brush acted as integral parts of the judicial system with respect to the custody of Plaintiff's children. Plaintiff claims that absolute immunity cannot be extended to Clermont County and Brush because "the Clermont County Juvenile Court acted totally without jurisdiction when they [sic] sought to adjudicate the parental rights of plaintiff Sammye Holloway, and later when they [sic] retained custody of those children based on an original temporary custody order filed in 1990." Plaintiff relies upon the decision from the Ohio Court of Appeals in support of her contention. We disagree.

■ This Court reviews a district court's order granting summary judgment *de novo. Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R .Civ. P. 56. The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party satisfies its burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### 1. Liability of Clermont County

■ As a threshold matter, we note that although the district court found that Clermont County was immune from suit, it is well-settled that local government entities, while being considered a "person" subject to § 1983 liability, are not entitled to assert the immunity defenses available to individual actors sued in their individual capacities. *See Monell v. Department of Soc. Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245 (6th Cir.1989). However, with that said, we affirm the judgment of the district court nonetheless because, as analyzed below, Plaintiff failed to demonstrate that any final policy by a policymaker caused the alleged harm. *See Andrews v. Ohio,* 104 F.3d 803, 808 (6th Cir.1997) (finding that on *de novo* review, an appellate court may affirm on any grounds supported by

the record, even if different from the reasons of the district court); *Hilliard v. United States Postal Serv.*, 814 F.2d 325, 326 (6th Cir.1987) (stating that we will affirm a correct result reached by a district court even where we reach that result for a different reason).

In *Coogan v. City of Wixom*, 820 F.2d 170, 175–76 (6th Cir.1987), this Court enunciated the rule set forth by the United States Supreme Court in *Monell* regarding a municipality's liability under § 1983. Specifically, this Court quoted *Monell* as follows:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Coogan*, 820 F.2d at 175–76 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). The Supreme Court expounded on this rule in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), when it stated that, "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible .... [such that] [t]he official must ... be responsible for establishing final government policy respecting such activity before the municipality can be held liable."

 Here, Plaintiff failed to allege that any official policy or custom caused her harm, and the record does not indicate that any such policy was implicated here. It is true that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances[,]" *see Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292; however, no single decision can be found in this case to qualify as such.

*See Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997) (recognizing that § 1983 liability may attach to a single decision attributable to a municipality where the evidence that the municipality acted and the plaintiff suffered a deprivation of a federal right constitutes proof of fault and causation); *compare Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (finding that when a City Council passed a resolution firing a plaintiff without a pretermination hearing constituted a single act rising to the level of a policy).

 In addition, Plaintiff failed to show that any county official or employee who allegedly infringed upon her constitutional rights had authority to make policy. In *Pembaur*, the Supreme Court defined the authority that must be possessed by a policymaker to render a municipality liable for the acts:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

475 U.S. at 481–83, 106 S.Ct. 1292. Here, assistant prosecutor Thomas Flessa wrote Plaintiff a letter informing her that the children were in the permanent custody of the CCDHS, that the plan was to seek an adoptive home(s) for the children, and that Plaintiff should seek the assistance of an attorney in regard to her legal rights. Likewise, Brush, as social worker assigned to the case, wrote Plaintiff a similar letter advising her to seek counsel. However, neither Flessa nor Brush qualify as deci-

sionmakers under *Pembaur*.[2] Although both played roles in the process which ultimately led to the termination of Plaintiff's paternal rights, neither may be said to be responsible for establishing final government policy in regard to Plaintiff's case.

Furthermore, to the extent that Plaintiff may claim an action against Clermont County on the basis of any alleged wrongdoing by Brush, such a claim would fail because it is well-settled that "a municipality is not liable under 42 U.S.C. § 1983 for its employees' acts on a respondeat superior theory." *Pusey v. City of Youngstown*, 11 F.3d 652, 659 (6th Cir. 1993) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018).

Accordingly, because Plaintiff failed to demonstrate that any final policy by a policymaker caused the harm alleged, the district court properly granted Clermont County summary judgment, albeit for a different reason than found here. *See Hilliard*, 814 F.2d at 326.

## 2. Liability of Caseworker Brush

Plaintiff argues that the district court erred in finding Brush absolutely immune from liability on the basis that Clermont County Juvenile Court acted in the absence of personal jurisdiction over Plaintiff, or subject matter jurisdiction over the custody hearing. *See* Brief for Appellant at 8–16. Specifically, Plaintiff, acting through counsel, argues on appeal to this Court that "[t]he protection of absolute immunity cannot be extended to defendants Clermont County and Sally Brush where the court has acted in clear absence of all jurisdiction. The Magistrate's granting of summary judgment should be over-

ruled." *See* Brief for Appellant at 9–10. We disagree.

The fact that the Clermont County Juvenile Court ("CCJC") was ultimately held to have had no jurisdiction over Plaintiff at the time of the proceedings does not deprive it or Brush of the absolute immunity to which they may be entitled. *See Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citing *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646 (1871)) (finding that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' "); *Watts v. Burkhart*, 978 F.2d 269, 272–73 (6th Cir.1992) (*en banc* ) (noting that the absolute immunity afforded to judges is also afforded to prosecutors); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984) (extending the absolute immunity afforded to prosecutors to those who perform analogous functions such as employees of state department of social services). At the time the CCJC rendered its decision, it was not acting "in the clear absence of all jurisdiction." The Ohio Code expressly confers jurisdiction upon the juvenile court regarding custody matters. *See* OHIO REV. CODE ANN. § 2151.23 (Anderson Supp.1997). It is true that the Ohio Court of Appeals later found that because Plaintiff had not been sufficiently noticed, jurisdiction of the juvenile court had not attached; however, this finding does not mean the CCJC was acting in the "clear absence of jurisdiction" at the time it rendered its decision for purposes of divesting absolute immunity. *See Stump*, 435 U.S. at 356–58, 98 S.Ct. 1099.[3]

---

**2.** For example, Brush's responsibilities as a caseworker, such as reporting abuse or neglect, filing case plans with the court, and reporting to the court on a semi-annual basis are set forth by Ohio statutes. *See, e.g.,* OHIO REV.CODE ANN. §§ 2151.412; 2151.416 (Anderson Supp.1997).

**3.** Defendants filed a motion to strike the Ohio Court of Appeals opinion from our consideration claiming that this Court should not consider information that was not part of the record. However, in *Schultz v. Tecumseh Prods.*, 310 F.2d 426, 433 (6th Cir.1962), this Court found that, as a federal court, it was required to take judicial notice of the case law of each state "without plea or proof." There-

■ " '[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' " *Stump*, 435 U.S. at 355–56, 98 S.Ct. 1099 (quoting *Bradley*, 13 Wall. at 351, 20 L.Ed. 646). In *Stump*, the Supreme Court illustrated the distinction between acting with the lack of jurisdiction and acting in excess of jurisdiction as follows:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

435 U.S. at 357 n. 7 (citing *Bradley*, 13 Wall. at 352, 20 L.Ed. 646). Similarly, the fact that it was later determined that the jurisdiction statutorily afforded to the CCJC had not attached, inasmuch as Plaintiff was not properly noticed, merely means that the CCJC was acting in the excess of his jurisdiction for purposes of absolute immunity. Therefore, Plaintiff's claim that Brush cannot be afforded absolute immunity because the CCJC proceeded without the same fails.

■ Inasmuch as Plaintiff limited her argument on appeal regarding Brush's absolute immunity from individual liability to the issue of the CCJC's proceeding without jurisdiction, our inquiry into Brush's individual liability ends here.[4] *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 881 (6th Cir.1996) (finding that we will only consider those claims raised and argued to this Court; all other arguments are considered waived). However, even when considering Brush's individual liability on substantive grounds, a question remains as to whether Plaintiff properly named Brush in an individual capacity in her complaint. In *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir.1989), this Court held that it will assume that a government official is being sued in his official capacity unless the plaintiff "properly allege[s] capacity in [his] complaint." The rationale behind the specificity rule was to afford state officials sufficient notice that they may be held personally liable for any damage award. *Id.* The Court also held that the requirement applied to *pro se* plaintiffs, noting that "[i]t is certainly reasonable to ask that all plaintiffs, even *pro se* plaintiffs, some of whom file several appeals each year with us, [to] alert party defendants that they may be individually responsible in damages." *Id.*

However, in *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir.1995), this Court held that although the *pro se* plaintiff's complaint failed to specify that he was suing the state officers in their individual capacities, the plaintiff could proceed with his individual claim because the state officials "were given sufficient notice of the

fore, we take judicial notice of the decision from the Ohio Court of Appeals rendered here.

4. We emphasize that because Plaintiff limited her argument on appeal regarding Brush's absolute immunity from individual liability solely to the issue of whether the CCJC acted without jurisdiction, our inquiry into Brush's absolute immunity ends here, and this is the proposition upon which we base our holding on this issue. The dissent disagrees with this holding by claiming that Plaintiff raised additional arguments regarding absolute immunity as applied to Brush in Plaintiff's reply brief. However, it is well-settled in this circuit that arguments raised for the first time in a reply brief will not be considered by this Court. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir.1986) (refusing to consider argument raised for the first time by the plaintiff in the reply brief); *Howard v. Pierce*, 738 F.2d 722, 723 n. 2 (6th Cir.1984) (finding that an argument first raised in reply brief was not properly before the Court). The rationale for this rule is that the appellee has no opportunity to otherwise respond. *See Wright*, 794 F.2d at 1156. It is of particular importance for the Court to adhere to this rule when the facts are in dispute and the resolution of the argument is not "obvious." *Id.*

fact that they were being sued in their individual capacity." The Court considered a motion filed by the plaintiff one month after the complaint was filed— wherein the plaintiff moved that the Ohio Attorney General be barred from representing the defendants and "specifically stated that the defendants acted outside the scope of their employment and in bad faith when they cut his hair"—in concluding that sufficient notice was provided. *Id.* Similarly, in *Abdur–Rahman v. Michigan Dep't of Corrections,* 65 F.3d 489, 491 (6th Cir.1995) this Court found that although the plaintiff's complaint failed to specify the capacity in which the defendants were being sued, the plaintiff's reply to the motion for summary judgment provided sufficient notice that the defendant was being sued in his individual capacity. Likewise, in *Perry v. Croucher,* No. 97–3033, 1998 WL 661151, at *7–8 (6th Cir.1998), this Court found that where the complaint repeatedly specified that the defendants acted " 'in bad faith' " and " 'willfully, maliciously, and with reckless indifference to and in disregard of' " the plaintiff's rights; and where the defendants moved for dismissal on the basis of immunity, the defendants had sufficient notice that they were being sued in their individual capacities. *Id.* The fact that defendants raised the immunity defense was significant because "such immunity is extended to officials only in their personal capacities" thereby indicating that the defendants had an understanding that they were being sued in their personal capacities. *Id.*

■ In this case, although the caption of Plaintiff's complaint is ambiguous, the relief requested does pray that "SALLY BRUSH PAY THE SUM OF 25,000 DOLLARS" and that "CLERMONT COUNTY PAY THE SUM OF 100,000 DOLLARS." (J.A. at 9, emphasis in original.) In addition, Defendants, including Brush, asserted the affirmative defense of immunity, briefed the issue to the court, and this case was dismissed at a very early stage in litigation. (J.A. at 109–14.) Accordingly, as in *Pelfrey, Abdur,* and *Perry,* it is reasonable to assume that Brush had sufficient notice that she was being sued in her individual capacity so as to distinguish this case from *Wells.*

■ However, even if this argument against Brush was raised and argued properly, distinguishing this case from *Wells* is just the first step in determining whether the individual capacity claim against Brush is viable because the claim cannot survive summary judgment if the district court was correct in concluding that Brush was entitled to absolute immunity. As stated, in *Kurzawa v. Mueller,* this Court specifically found that "state employees who are responsible for the prosecution of child neglect ... [who] protect the health and well-being of ... children ... are entitled to [absolute] immunity." 732 F.2d at 1458. The Court reasoned that these employees "must be able to perform the necessary tasks to achieve [their] goal[s] without the worry of intimidation and harassment from dissatisfied parents." *Id. see also Scarso v. Cuyahoga County Dep't of Human Serv.,* No. 89–4071, 1990 WL 169645, at *2 (6th Cir.1990) *(per curiam );* *Salyer v. Patrick,* 874 F.2d 374, 378 (6th Cir.1989) (finding that social service workers function as prosecutors in bringing child welfare petitions before the court).

In *Achterhof v. Selvaggio,* 886 F.2d 826, 830 (6th Cir.1989), this Court drew a distinction between the level of immunity afforded to a social worker when he performs duties which are "prosecutorial, judicial, or otherwise intimately related to the judicial process," and when he performs duties which are "investigatory or administrative" in nature. The Court found that in the latter instance, the social worker's actions would not be absolutely immune. *Id.* We later reaffirmed this distinction in *Hoffman v. Harris,* No. 92–6161, 1993 WL 369140, at *2 (6th Cir. 1993), *cert. denied,* 511 U.S. 1060, 114

S.Ct. 1631, 128 L.Ed.2d 354 (1994) [5], when we stated as follows:

> *Salyer* does not require, however, that a social worker has absolute immunity in any role relating to a child abuse prosecution. In *Achterhof v. Selvaggio*, 886 F.2d 826 (6th Cir.1989), we held that a social worker in an "investigatory" role receives only qualified immunity from § 1983 actions. The basis for *Achterhof* is that, when investigating, the social worker has exceeded the prosecutorial function and is performing a standard administrative one that receives only the qualified immunity usually given to government officials. This circuit's distinction between *Salyer* and *Achterhof* follows Supreme Court precedent, including the Court's recent decision *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In *Buckley*, the Court empha-

sized the "functional approach" to determining absolute immunity, which looks to "['?]the nature of the function performed, not the identity of the actor who performed it.'" *Id.* 113 S.Ct. at 2613 (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). *Buckley* held that the activities of searching for clues at the scene of a crime and of making assertions to the media are functions that are not absolutely immunized, even for prosecutors themselves. *Id.* 113 S.Ct. at 2616–17.

Indeed, affording social workers absolute immunity for the functions that they perform which are prosecutorial, judicial, or otherwise intimately related to the judicial process—but affording only qualified immunity for those acts which are investigative or administrative—is the approach adopted by other circuits as well.[6] There-

---

**5.** Two Justices of the Court dissented from the Court's denial of certiorari in *Hoffman*, on the basis that no court has ever seriously considered the "necessary historical inquiry" as to whether social workers enjoyed absolute immunity for their official duties in 1871. *Hoffman v. Harris*, 511 U.S. 1060, 114 S.Ct. 1631, 1632–33, 128 L.Ed.2d 354 (1994). They added that this inquiry was premised upon the assumption that social workers, at least as we know that term today, even existed in 1871, and that if that assumption fails, the argument for granting social workers absolute immunity becomes more difficult to maintain. *Id.*

However, the Justices' reasoning seems contradictory to the Court's holding in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), where the Court found that a government official may still be entitled to absolute immunity even if the position he so holds did not exist at common law, as long as the official functions which he performs are analogous to those functions performed by those who were immune at common law. Therefore, even if social workers as we know that term today did not exist in 1871, the fact that prosecutors existed in 1871 and were absolutely immune, supports the position that social workers should be absolutely immune from liability for those functions which are "prosecutorial" in nature in that they are integral to the judicial prosecution of the case. *See Ernst*, 108 F.3d at 496 n. 6 (noting the inconsistency between the dissenting Jus-

tices' reasoning in *Hoffman* and Supreme Court precedent).

**6.** *See, e.g., Ernst v. Child and Youth Servs.*, 108 F.3d 486, 495–96, 497 n. 7 (3d Cir.1997) (emphasizing that when a caseworker's actions are "analogous to a prosecutor's preparation for and initiation and presentation of a criminal prosecution, the caseworker is entitled to absolute immunity, but the caseworker is entitled only to qualified immunity when his actions are investigative or administrative in nature"); *Millspaugh v. County Dep't of Pub. Welfare*, 937 F.2d 1172, 1176 (7th Cir. 1991) (holding that social worker's are entitled to absolute immunity for their actions which are prosecutorial in nature such as presenting evidence, or withholding evidence, from the court, but that social workers are entitled only to qualified immunity for actions that are administrative in nature such as applying for an order to initiate a case); *Snell v. Tunnell*, 920 F.2d 673, 686–89 (10th Cir.1990) (adopting the position that "[w]hen the activity of the social worker is not integral to the judicial process, absolute immunity is not warranted[,]" and thus holding that the pre-adjudicatory investigation practices of the social workers were entitled only to qualified immunity); *Austin v. Borel*, 830 F.2d 1356, 1363 (5th Cir.1987) (recognizing that under the functional approach to immunity, a social worker's filing of a verified complaint was not entitled to absolute immunity inasmuch as the act did not initiate adjudicative proceedings

fore, in deciding whether Brush is entitled to absolute immunity for her actions of which Plaintiff complained, we must employ the "functional approach" as mandated by Supreme Court precedent, and as recognized by this Circuit and other circuits as well, to determine whether the acts were prosecutorial in nature. *See Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 507, 139 L.Ed.2d 471 (1997) (finding that in determining immunity, the court does not focus on the identity of the actor, but on the function performed so that, in the case of prosecutors, their role as an advocate was protected by absolute immunity, but their role as an investigator was not so protected); *Buckley v. Fitzsimmons,* 509 U.S. 259, 277–78, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (distinguishing between a prosecutor's functioning as an "advocate" in a judicial proceeding for which he is entitled to absolute immunity, and his functioning as an investigator looking for evidence to arrest for which he is not entitled to absolute immunity); *Burns v. Reed,* 500 U.S. 478, 491–93, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (emphasizing its "functional approach" to immunity under § 1983 and finding that absolute immunity extends only to prosecutorial activities that are "intimately associated" with the judicial phase of the criminal process); *see also Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (holding that prosecutors are absolutely immune from § 1983 liability for those quasi-judicial acts which involve initiating a prosecution and presenting the state's case); *supra* note 5.

Here, the record indicates that Brush received a letter from the Washington Department of Social and Health Services, mailed on May 12, 1993, containing Plaintiff's contact information; that Brush received a letter from Plaintiff on May 20, 1993, asking Plaintiff to put the children on an airplane to Kansas, where she was living at the time; that Plaintiff and Brush spoke by telephone on May 21, 1993, at which time Brush advised Plaintiff to retain counsel; and that by letter dated June 2, 1993, Brush confirmed the substance of the call with Plaintiff. These actions occurred approximately five months after the hearing had been held on this case before the referee, and about three weeks before the trial court affirmed the referee's report which found by clear and convincing evidence that it was in the children's best interests that the Clermont County Department of Human Services be awarded permanent custody. Plaintiff bases her § 1983 claim on the premise that she informed Brush of her address and her intent to assert her parental rights before those rights were severed.

▬ Brush's specific actions for which Plaintiff complained, as can best be interpreted from reviewing her *pro se* "amended complaint" filed April 4, 1994, are that Brush (1) failed to notify the trial court that Plaintiff wished to assert her parental rights; (2) told Plaintiff that her parental rights had been severed when they had yet not yet been; and (3) withheld information from Plaintiff about the proceedings which would have enabled Plaintiff to raise the issue in court before her rights were severed.[7] (J.A. at 8–11.) Because we find

but, rather, was akin to a police officer's complaint filed to obtain an arrest warrant and was therefore entitled only to qualified immunity).

7. Plaintiff's amended complaint states in pertinent part as follows:

SHE [MRS. HOLLOWAY] THEN CONTACTED THE DEPT[.] OF HUMAN SERVICES IN CLERMONT CO. IN BATAVIA[,] OHIO AT WHICH TIME A SALLY BRUSH THE CHILDREN[']S SOCIAL WORKER SET UP A TIME TO CALL HER[.] DURING

THIS PHONE CALL MS[.] BRUSH INFORMED MRS[.] HOLLOWAY THAT THEY HAD TAKEN THE KIDS FROM THEIR FATHER AND THAT THEY HAD ALSO TAKEN AWAY HER PARENTAL RIGHTS[.] THEY COULD NOT TELL HER WHY OR EVEN HOW THEY THOUGH [SIC] THEY COULD DO THIS, AND THEN THEY CUT OFF ALL CONTACT WITH HER WITHOUT ANY KIND OF PROVE [SIC].

(J.A. at 10–11 (emphasis in original).)

that these actions are analogous to a prosecutor's evaluation of the evidence and presentation of the same in a criminal prosecution, we hold that even if Plaintiff had argued to this Court that Brush was not entitled to absolute immunity because her acts were investigative or administrative in nature, her claim would have failed.

■ In *Buckley*, the Supreme Court noted that absolute immunity extends to those acts of a prosecutor, whether *inside* or *outside* the courtroom, which are part of the prosecutor's role as an advocate for the state:

> Petitioner argues that *Imbler's* protection for a prosecutor's conduct "in initiating a prosecution and in presenting the State's case," 424 U.S., at 431, 96 S.Ct., at 995, extends only to the act of initiation itself and to conduct occurring in the courtroom. *This extreme position is plainly foreclosed by our opinion in Imbler itself. We expressly stated that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," and are nonetheless entitled to absolute immunity. Id.,* at 431, n. 33, 96 S.Ct., at 995, n. 33. *We noted in particular that an out-of-court "effort to control the presentation of [a] witness' testimony" was entitled to absolute immunity because it was "fairly within [the prosecutor's] function as an advocate." Id.,* at 430, n. 32, 96 S.Ct., at 995, n. 32. To be sure, *Burns* made explicit the point we had reserved in *Imbler,* 424 U.S., at 430–31, and n. 33, 96 S.Ct., at 994–996, and n. 33: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. *See Burns,* 500 U.S., at 494–496, 111 S.Ct., at 1943–1944. *We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.*

*Buckley,* 509 U.S. 259, 272–73, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) (emphasis added).

In *Imbler,* the Court noted that the plaintiff had argued that some of the prosecutor's actions were "police-related" or investigatory, in that the actions in question dealt with the prosecutor's request to the police during a courtroom recess that they hold off questioning a witness about pending bad checks until after the witness testified. 424 U.S. at 430 n. 32, 96 S.Ct. 984. The plaintiff claimed that the prosecutor's request was an investigative activity, for which absolute immunity would not apply, because it was a directive to police officers engaged in the investigation of a crime. *Id.* The Court rejected the plaintiff's claim, and stated that when [s]een in its proper light, however, [the prosecutor's] request of the officers was an effort to control the presentation of his witness' testimony, a task fairly within his function as an advocate. *Id.*

In this case, Brush's actions for which Plaintiff complained—Brush's decision to withhold evidence from the court or accurately apprise Plaintiff of her rights—are acts for which Brush is protected by absolute immunity in that the acts were intimately associated with the judicial phase of the child protection hearing. *See Buckley,* 509 U.S. at 272–73, 113 S.Ct. 2606; *see also Ernst v. Child & Youth Servs.,* 108 F.3d 486, 496 (3d Cir.1997). For example, Brush's failure to accurately apprise Plaintiff of the status of the case, or failure to provide her with information about the case, is analogous to a prosecutor's out-of-court effort to control the testimony of a

444

witness, conduct which the Supreme Court has held to be absolutely immune from liability inasmuch as it falls " 'fairly within [the prosecutor's] function as an advocate.' " *Buckley*, 509 U.S. at 272–73, 113 S.Ct. 2606 (citing *Imbler*, 424 U.S. at 430 n. 32, 96 S.Ct. 984 (alteration in *Buckley*)). The inference from Plaintiff's complaint is that had Brush accurately apprised her of the status of the custody case — i.e., Plaintiff's parental rights had not been officially terminated at the time Plaintiff spoke to Brush — Plaintiff would have had time to contact the court to file and appearance and assert her rights. Clearly, Brush's failure to so notify Plaintiff was prosecutorial in nature in that it was "intimately associated with the judicial phase of the criminal process," and the misinformation prevented Plaintiff from asserting her rights in a timely fashion thereby controlling the testimony of a "witness." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984.

Likewise, Brush's failure to notify the court of Plaintiff's surfacing in this case is analogous to a prosecutor's out-of-court effort to control a witness, as well as a prosecutor's evaluation of the evidence for presentation to the court. *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. True enough, Plaintiff was a party to the action, and not "evidence" *per se;* however, the basis for affording a prosecutor absolute immunity for his actions involving the evaluation and presentation of evidence to the court applies to this instance as well, in that in both cases his actions are "intimately associated with the judicial phase of the criminal[, or custody as the case may be,] process." *Id.* Brush's failure to notify the court of Plaintiff's surfacing may also be analogized to a social worker's act of filing a child abuse petition—conduct for which

the social worker is absolutely immune under *Salyer*—in that both acts are prosecutorial in nature, albeit in one instance the social worker is making information known to the court while in the other she is withholding information from the court.

Although we find Brush's failure to accurately apprise the court and Plaintiff of the status of her parental rights to be reprehensible, we cautiously note that under the facts of this case, her misrepresentation to Plaintiff and failure to notify the court may have been a careless mistake attributable to a heavy workload, as opposed to an affirmative act motivated by malice or corruption. For example, the record indicates that Brush committed the alleged acts five months after the hearing was held on this case, where the referee found by clear and convincing evidence that it was in the children's best interests that the Clermont County Department of Human Services be awarded permanent custody of the children, and about three weeks before the trial court affirmed the referee's report. Furthermore, Brush also advised Plaintiff during her telephone conversation with Plaintiff and the follow-up letter to seek the assistance of an attorney, although Plaintiff did not complain of the advice as being actionable here. However, because Brush was entitled to absolute immunity for the actions of which Plaintiff complained, even if her conduct was motivated by malice or corruption, and she deliberately controlled the presentation, or lack thereof, of Plaintiff to the court by providing Plaintiff with misinformation, and deliberately withheld Plaintiff's surfacing from the court, she cannot be held liable under § 1983.[8] *See, e.g., Ernst,* 108 F.3d at 498.

8. We note that although a plaintiff may not succeed in a civil suit under § 1983 because the defendant is entitled to absolute judicial or quasi-judicial immunity, the defendant may be criminally liable under § 18 U.S.C. § 242 for willful deprivations of constitutional rights. *See Briscoe v. LaHue,* 460 U.S. 325, 345, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). For example, although a social worker would

be absolutely immune from § 1983 liability for her perjured testimony against a parent, she would not be shielded from the § 1983 criminal analog, § 242. *See id.* at 345–46, 103 S.Ct. 1108; *Dennis v. Sparks,* 449 U.S. 24, 29 n. 5, 31–32, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (finding that "[a] state judge can be found criminally liable under § 242 al-

Indeed, in *Ernst,* the Court of Appeals for the Third Circuit found that caseworkers were absolutely immune from § 1983 liability for the recommendations made to the court involving custody of a minor child away from her grandmother, where the record indicated that the caseworkers were involved in such an "adversarial" relationship with the grandmother that the problem had escalated "to the point where state intervention in [the child's] life [was] ... doing more harm than good." *Ernst v. Child & Youth Servs.,* 108 F.3d at 489–91, 496–98. Notably, the Third Circuit rejected the plaintiff's challenge to the caseworkers' "formulation of professional judgments that served as the basis for a series of recommendations they made to the [state court]." *Id.* at 498. The court reasoned that "[t]o grant [the caseworkers] absolute immunity for the observations and judgments that were the necessary predicate for those recommendations would eviscerate the immunity they did receive and undermine the purposes sought to be advanced by the grant of absolute immunity." *Id.*

Social workers, like prosecutors, are frequently acting under serious time constraints where the safety and well-being of a child may be tenuous at best, and often bear a voluminous case load in a profession that is historically understaffed for the apparent societal need. As such, these workers may often make decisions that could "engender colorable claims of constitutional deprivation[,]" to the extent that they may frequently be called to defend their actions in an individual capacity, thereby deterring the workers from the substantive needs of their cases. *Compare Imbler,* 424 U.S. at 425–26, 96 S.Ct. 984 (finding that because prosecutors often work under time constraints, they may often make decisions which could give rise to § 1983 claims, but it is in the greater good not to hold the prosecutors liable for such potential claims); *see Ernst,* 108 F.3d at 496 (finding that public policy consider-

though that judge may be immune from dam-

ations supporting absolute immunity for prosecutors apply with equal force to child welfare workers acting in dependency proceedings). Furthermore, "[s]ocial workers often act on limited information; those who tarry, or resolve all doubts in favor of the parents, chance enduring damage to the children." *Millspaugh,* 937 F.2d at 1176–77 (citing *DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). As such, "immunity helps social workers put their private interests aside and concentrate on the welfare of children. Unfortunately, immunity also may embolden social workers to pursue their private agendas.... One effect is inseparable from the other." *Millspaugh,* 937 F.2d at 1177. However, it is for the greater good that social workers proceed in their quasi-judicial capacities without fear of redress from disgruntled parents who are often times dealing with stressful situations such as divorce and financial crisis. As espoused by Judge Learned Hand years ago when commenting on the absolute immunity afforded to police officer witnesses who knowingly provide false testimony against defendants:

> "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

*Briscoe v. LaHue,* 460 U.S. 325, 345, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949)).

We therefore hold that the district court properly granted summary judgment as to Brush where she did not serve as a policymaker for purposes of liability in her official capacity, and where Plaintiff's claim that the court proceeded in excess of its jurisdiction thereby depriving Brush of her absolute immunity in an individual capacity

ages under § 1983")

fails. Furthermore, although Plaintiff failed to challenge Brush's absolute immunity on any basis other than the jurisdictional argument, we find that because Brush's actions which Plaintiff raised in her amended complaint were intimately related to the judicial proceedings so as to render them prosecutorial in nature, a substantive challenge to Brush's absolute immunity would have failed nonetheless.

### B.

Next, Plaintiff argues that the district court erred in finding that she failed to state a claim for conspiracy to violate § 1983. Plaintiff alleged that Clermont County and Brush conspired to deny her due process of law in proceeding to terminate her parental rights. On appeal, Plaintiff claims that the court erred in dismissing her conspiracy claim because the pleadings, coupled with the CCJC's lack of jurisdiction, were sufficient to avoid dismissal. We disagree.

 This Court reviews a lower court's decision regarding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) *de novo* because the lower court's decision is based purely on the legal sufficiency of the plaintiff's case. *Barrett v. Harrington,* 130 F.3d 246, 251 (6th Cir.1997). When considering a motion to dismiss for failure to state a claim, this Court is required to take as true all factual allegations in the complaint. *Id.*

 First, Plaintiff's failure to plead this claim with specificity rendered it prey to a motion to dismiss. "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986) (citing *Place v. Shepherd,* 446 F.2d 1239 (6th Cir.1971); *Blackburn v. Fisk Univ.,* 443 F.2d 121 (6th Cir.1971)). The rationale behind the necessity of stating a claim in

terms of facts rather than conclusions in a civil rights action against the government was succinctly stated by this Court in *Chapman:*

> When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties.

808 F.2d at 465.

Here, Plaintiff's complaint alleged that Clermont County and Brush conspired to violate her civil rights in that "defendants are working to gather [sic] to keep her and her sons apart therefor depriving Mrs. Holloway of any happiness." (J.A. at 9.) However, as found by the magistrate, Plaintiff's complaint failed to set forth any specific actions on the part of Clermont County and Brush to support her conspiracy claim. The subsequent ruling by the Ohio Court of Appeals, that the CCJC failed to properly notice Plaintiff, does not change the fact that she failed to properly plead her complaint on this issue. *See Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987) (finding that "conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983"); *see also Wells,* 891 F.2d at 593 (finding that *pro se* plaintiffs should be held to the same pleading standards as those plaintiffs who are represented by counsel).

 Furthermore, assuming Plaintiff had alleged a properly pleaded complaint on this issue, her claim would fail nonetheless because, as stated *supra,* she must allege that a policy or custom by a policymaker of Clermont County caused the harm alleged and Plaintiff has failed to do

so. Accordingly, the district court properly dismissed Plaintiff's claim.

## C.

Lastly, Plaintiff argues that her claim for violation of right to counsel was improperly dismissed as failing to state a claim. Plaintiff argues that it was erroneous to dismiss this claim because personal jurisdiction was never gained over Plaintiff and she suffered significant injury due to Clermont County's failure to provide counsel. We disagree.

■■ The Sixth Amendment obligates a state to provide counsel to criminal defendants at trial and upon conviction for the first appeal. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Therefore, because Plaintiff is not before this court as an accused criminal defendant, the Sixth Amendment right to counsel does not apply.

■■ However, in *Lassiter v. Department of Social Serv. of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court found that the right to counsel may arise in a matter involving the termination of parental rights under the Fourteenth Amendment:

> Since the state has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision. For this reason, the State may share the indigent parent's interest in the availability of appointed counsel. If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may ' become unwholesomely unequal.

*Id.* at 27–28, 101 S.Ct. 2153. Ohio, in fact, provides for counsel at proceedings terminating parental rights. *See Butler v. Demis,* 66 Ohio St.2d 123, 420 N.E.2d 116 (1981); *Heller v. Miller,* 61 Ohio St.2d 6, 399 N.E.2d 66 (1980). However, inasmuch as Plaintiff never appeared before the CCJC, it is speculative to say that Plaintiff would have been denied the right to counsel had she been informed of the proceedings through proper notice. Where a plaintiff alleges a violation of her constitutional rights based upon conjecture or speculation with no factual basis, the claim must fail. *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996). Accordingly, the court did not err in finding that Plaintiff failed to state a claim upon which relief could be granted when she claimed that she was denied her right to counsel at the custody proceedings in the CCJC.

## III.

### Conclusion

Although we cannot convey strongly enough our disapproval with the seemingly careless fashion in which Clermont County proceeded in this action, we are restricted in our holding today. Plaintiff failed to allege the requisite facts in order to create a genuine issue of fact in relation to Clermont County and Brush's official liability. In addition, to the extent that it can be found that Plaintiff named Brush as a defendant in her individual capacity, Brush is clearly entitled to absolute immunity— particularly where Plaintiff challenged Brush's immunity solely on jurisdictional grounds; however, even when the challenge is considered on substantive grounds, Plaintiff's challenge to Brush's absolute immunity fails.

"Disagreement with the action taken ... does not justify depriving [a judicial officer] of his immunity. Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice ... [, for

it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequence to himself.'" *Stump,* 435 U.S. at 363–64, 98 S.Ct. 1099 (quoting *Bradley,* 13 Wall. at 347, 20 L.Ed. 646). However, we also emphasize that the Supreme Court has long recognized that "[a] parent's interest in the accuracy and injustice of the decision to terminate his or her parental status is ... a commanding one." *Lassiter,* 452 U.S. at 27, 101 S.Ct. 2153. Therefore, we urge Clermont County to comply with the edict of the Ohio Court of Appeals, and commence retaining jurisdiction over Plaintiff so that she may properly be afforded the hearing on her parental rights to which she is entitled.

Accordingly, for the above stated reasons, the judgment of the district court is **AFFIRMED**.

BOGGS, Circuit Judge, concurring and dissenting.

I concur with the judgment and the opinion of the court, except as to the issue of the absolute immunity of Defendant Brush. I therefore dissent from the reasoning and judgment of Part II.A.2 of the court's opinion.

I

Judges and other court officers are absolutely immune from suit on claims arising out of their performance of judicial or quasi-judicial functions, *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994), but not from suits that arise out of other conduct, *Forrester v. White,* 484 U.S. 219, 228, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Clinton v. Jones,* 520 U.S. 681, 694–95, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). Absolute immunity is determined by a functional analysis that looks to "'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct.

2606, 125 L.Ed.2d 209 (1993) (quoting *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). The official seeking absolute immunity bears the burden of showing that immunity is justified in light of the function he was performing with the acts complained of. *Burns,* 500 U.S. at 486, 111 S.Ct. 1934.

Holloway alleges that she informed Brush of her address and her intent to assert her parental rights before those rights were severed, and that Brush (1) failed to notify the trial court that Holloway, a party in the action, had made contact and wished to assert her parental rights; (2) told Holloway that her rights had already been severed when, in fact, they had not been; and (3) withheld information from Holloway that would have enabled her to raise the issue in court before her rights were severed. Holloway argues that her claim does not arise out of Brush's performance of quasi-judicial functions. I agree.

It is uncontested that Brush received a letter from the Washington Department of Social and Health Services, mailed on May 12, 1993, containing Holloway's contact information; that Brush received a letter from Holloway on May 20, 1993, asking Brush to put the children on an airplane to Kansas, where she was living at the time; that Holloway and Brush spoke by phone on May 21, 1993, at which time Brush advised Holloway to retain counsel; and that Brush wrote to Holloway on June 2, 1993, indicating her understanding that they had an adversarial relationship and once again advising Holloway to retain counsel. The fact that Brush recognized the existence of an adversarial relationship raises a strong inference that she not only had been informed, but clearly understood that Holloway wished to assert her parental rights. It is a matter of public record that Holloway's parental rights were not severed until June 16, 1993, when the Clermont County Court of Common Pleas, Juvenile Division, adopted the report of the referee. *See In re Holloway,* No. CA93–

08–057, 1994 WL 18161 at *1 (Ohio Ct. App. Jan. 24, 1994) (unpublished); *In re Holloway,* No. CA95–09–064, 1996 WL 227481 at *1 (Ohio Ct.App. May 6, 1996) (unpublished).

## II

This court has held that under certain circumstances, social workers are entitled to absolute immunity. *See Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984) (holding that social workers are entitled to absolute immunity when prosecuting child delinquency petitions); *Salyer v. Patrick,* 874 F.2d 374, 377–78 (6th Cir.1989) (recognizing the functional orientation of the absolute immunity doctrine and holding that social workers are entitled to absolute immunity when filing child abuse petitions); *but see Achterhof v. Selvaggio,* 886 F.2d 826, 830 (6th Cir.1989) (holding that social workers are not entitled to absolute immunity when deciding whether to open or continue an investigation, or when deciding to enter a parent's name in a central register of abusers, all of which are administrative or investigative by nature rather than prosecutorial). In all three of these cases, this court has explicitly analogized the social workers to prosecutors for purposes of the functional analysis.[1] Thus, to determine the scope of the immunity extended to social workers, we look to the scope of prosecutorial immunity.

Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns v. Reed,* 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128

(1976). Prosecutors are not absolutely immune when they perform administrative, investigative, or other functions; for example, when they give legal advice to the police, hold a press conference, or fabricate evidence. *Ibid.* "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm.... *The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates'"* when they performed the actions complained of. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273–74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (emphasis added). The Supreme Court has extended absolute immunity to prosecutors only where their challenged acts were performed while serving as an advocate in legal proceedings. *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 507, 139 L.Ed.2d 471 (1997).

This Circuit has followed the Supreme Court closely. Prosecutorial immunity extends to "'[a] prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer.'" *Manetta v. Macomb County Enforcement Team,* 141 F.3d 270, 274 (6th Cir.1998) (quoting *Ireland v. Tunis,* 113 F.3d 1435, 1446 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997)). Prosecutors are not absolutely immune, however, when they perform administrative, investigative, or other functions. *Manetta v. Macomb County Enforcement Team,* 141 F.3d 270, 274 (6th Cir.1998) (denying absolute immunity to a prosecutor for investigating a couple and holding them on extortion charges without probable cause). "Sixth Circuit precedent has established that 'the critical inquiry is how closely related is the

---

**1.** Justice Thomas doubts that social workers "can ever function as prosecutors for purposes of § 1983 immunity analysis." *See Hoffman v. Harris,* 511 U.S. 1060, 1060, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994) (Thomas, J., joined by Scalia, J., dissenting from the denial of certiorari where a father challenged the grant of immunity to social workers who initiated a court proceeding resulting in a court order suspending his visitation rights; *Hoffman v. Harris,* 1993 WL 369140 (6th Cir. Sept.21, 1993) (unpublished).).

prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process.'" *Pusey v. City of Youngstown,* 11 F.3d 652, 658 (6th Cir.1993) (emphasis added) (quoting *Joseph v. Patterson,* 795 F.2d 549, 554 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987)).

The analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate. *See Buckley,* 509 U.S. at 273–74, 113 S.Ct. 2606; *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. at 507, 139 L.Ed.2d 471; *Pusey,* 11 F.3d at 658. By analogy, social workers are absolutely immune only when they are acting in their capacity as *legal advocates*—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions. The case before us turns on whether the actions of which Holloway complains were taken by Brush *in her capacity as a legal advocate.*

## III

Brush is unquestionably entitled to absolute immunity for many of her actions in this case—in particular, filing two semi-annual reports with the court and testifying that the children's best interests would be served by awarding permanent custody to the state. These actions were those of a

legal advocate and, therefore, entitled Brush to absolute immunity under this circuit's controlling law. The actions of which Holloway complains, however—failing to notify the trial court that Plaintiff had made contact and wished to assert her parental rights, telling Plaintiff that her rights had been severed when they had not yet been, and withholding information that would have enabled Plaintiff to raise her rights in court before her rights were severed—are not those of a legal advocate under the law of this circuit, and do not entitle Brush to absolute immunity.[2]

Despite what I take to be canonical law to the contrary, the court bases its decision on several implausible holdings. First, the court holds that the actions of which Holloway complains "are analogous to a prosecutor's evaluation of evidence and presentation of the same in a criminal prosecution." *Supra* p. 442. However, the information withheld by Brush in the case before us was the fact that a party long sought by the court had appeared and wished to address the court to assert her legal rights. This is not *evidence* in the case, but rather administrative information about the case and its posture. Furthermore, the court's analogy can, at best, only apply to Brush's failure to inform the court that Holloway had appeared and wished to assert her parental rights. Lying to Holloway[3] about the termination of

2. The court states that today's decision is based exclusively on the proposition that Holloway limited her argument on appeal "solely to the issue of whether the CCJC acted without jurisdiction." *See supra* at 439 n. 4 and associated text; 24. While this assertion has the virtue of rendering the court's discussion of the substantive issue of absolute immunity in Part II.A.2, pp. 14–25, mere dicta, the assertion is incorrect. Holloway attacked the substantive *issue* of absolute immunity, on which Brush triumphed below, at each opportunity. It is true that the *arguments* in her main brief focused on the alleged lack of jurisdiction in the CCJC. However, in her reply brief she argued that "plaintiff would urge that [absolute immunity] should not be available to ... Brush, as a ... social worker," Reply Br. for Appellant at 11; *see also id.*

at 13–14, and that "[Brush's] actions would not qualify for absolute immunity under analysis of the functionality test ... as described in *Buckley,*" *id.* at 16. Indeed, the cases cited by Holloway are the very cases discussed by the court in its analysis of the substantive issue: *Kurzawa, Achterhof, Scarso, Salyer,* and *Hoffman. See id.* at 11, 14; *supra* at 441.

3. The court views Brush's misrepresentations as "a careless mistake attributable to a heavy workload." *Supra* p. 444. Holloway's complaint alleges that she was told that her parental rights had been severed and that her children were going to be adopted out "whether she liked it or not." J.A. at 7. The district court made no findings of fact regarding Brush's communication. *See* J.A. at 20–21. Holloway has alleged facts that consti-

her parental rights and failing to inform her about the upcoming court date have nothing whatever to do with evaluating and presenting evidence.

Second, the court holds that the actions of which Holloway complains are analogous to a prosecutor's request that police not question a witness about his suspected criminal activity until he had testified in another case, which the Supreme Court held was an acceptable effort of the prosecutor to control the testimony of his witness. *Supra* pp. 443–44 (citing *Imbler*, 424 U.S. at 430 n. 32, 96 S.Ct. 984). However, "[t]he simple fact that acts may ultimately lead to [or, as here, prevent] witness testimony does not serve to cloak these actions with absolute testimonial immunity." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir.1999) (citing *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir.1994)). Furthermore, whatever latitude a prosecutor has to control the testimony of *his* witness is beside the point in the case before us. Witnesses other than the defendant generally have no right to testify in criminal proceedings. Holloway was not Brush's witness, and this is not a situation of a prosecutor controlling Brush's actions. Holloway was an adverse party, analogous to the defendant in a criminal proceeding, whose right to be heard in court was denied by Brush's actions under color of law.

Third, the court holds that the actions of which Holloway complains are entitled to immunity because they were " 'intimately associated with the judicial phase of the criminal[, or custody as the case may be,] process.' " *Supra* p. 444 (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. 984). The court does not explain just *how* the actions of which Holloway complains were "intimately associated with the judicial process," other than through the two misplaced analogies just discussed. Its argument is

the naked assertion: "Clearly, Brush's failure to … notify Plaintiff was prosecutorial in nature in that it was 'intimately associated with the judicial phase of the criminal process.' " *Ibid.* But this reasoning is clearly circular—an example of what is known in formal logic as a *petitio principii.* Furthermore, an intimate association with the judicial process is not, by itself, sufficient for absolute immunity. The Supreme Court has explicated the *Imbler* standard on several occasions. "The question … is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' " when they performed the actions complained of. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *see also Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 507, 139 L.Ed.2d 471 (1997) (the Supreme Court has extended absolute immunity to prosecutors only where their challenged acts were performed while serving as an advocate in legal proceedings); *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir.1993) (immunity turns on the prosecutor's role *as an advocate* intimately associated with the judicial phase of the criminal process). Even if Brush could successfully explain how failing to tell the court that Holloway had appeared and wished to assert her parental rights, lying to Holloway about her rights, and failing to inform Holloway about the upcoming court date were intimately connected with the judicial process, she has not explained how they were the function of an advocate.

Suppose that a *pro se* criminal defendant was unsure of his court date, which is actually scheduled for next Monday. Suppose he called the prosecutor who, knowing the actual court date, told him either that he had already been convicted *in absentia* or that he should appear the Monday after next, thereby procuring the defendant's absence from trial. Finally,

---

tute lying, and the objective evidence indicates that Brush told her things that were not true. Taking the facts and making all reasonable inferences in the best light for Holloway,

as we are required to do when deciding Defendants' motion for summary judgment, we must premise our decision upon the supposition that Brush lied.

suppose that the prosecutor failed to inform the court that he had advised the defendant about when to appear, and that adverse action was taken against the defendant. When the defendant brings his § 1983 action against the prosecutor, on the reasoning of the court today it must fail due to prosecutorial immunity. But this is contrary to established law. The prosecutor in our hypothetical was not functioning as an advocate when he acted, and would not be immune under *Buckley, Kalina,* or *Pusey*. Brush was not functioning as an advocate when she performed essentially the same acts, and she is not immune either.

Finally, the court holds that the actions of which Holloway complains are analogous to recommendations made by caseworkers to the court, and the " 'formulation of professional judgments that served as the basis for' " such recommendations, which the Third Circuit held were entitled to immunity. *Supra* p. 445 (quoting *Ernst v. Child & Youth Servs.,* 108 F.3d 486 (3rd .Cir.1997)). In *Ernst,* the court had the opportunity to evaluate the caseworkers' actions and to accept or reject their suggestions. In the case before us, Brush's. actions *denied* the court the opportunity to accept or reject the results of her judgment. In effect, she appropriated the entire judicial process to herself by hiding Holloway and the court from each other and feeding them inaccurate information by act (in Holloway's case) and omission (in both cases). Even granting *arguendo* that Brush's actions were motivated by her "formulations of professional judgment," the actions themselves bear no resemblance to *recommendations* made to the court. They were, rather, *usurpations* of the court's authority. Even if such motivations could legitimate Brush's actions, it would be through qualified immunity, not absolute immunity, and she has not claimed qualified immunity.

## IV

What Brush did was not the evaluation and presentation of evidence. It was not controlling the testimony of her witness. It was not intimately associated with the judicial process, nor was it the function of an advocate. Finally, it was not a recommendation to the county court. It was a blatant usurpation of the entire judicial process that denied Holloway her right to be heard in court. The proper test is whether Brush has carried her burden of establishing that she was functioning as an advocate when she performed the actions complained of. *See Buckley,* 509 U.S. at 274, 113 S.Ct. 2606. She was not. I would apply the law of this circuit to the facts of the case before us, and reverse the judgment of the district court granting absolute immunity to Defendant Brush. I respectfully dissent.

## V

Finally, I cannot convey strongly enough my disapproval of and concern with the careless fashion in which Clermont County has proceeded in this action. I note that over three years ago the Court of Appeals of Ohio set aside the order of the Clermont County Court of Common Pleas granting permanent custody of the Holloway children to the government, and remanded the case for further proceedings. *In re Holloway,* No. CA95–09–064, 1996 WL 227481 at *3 (Ohio Ct.App. May 6, 1996) (unpublished). Holloway pursued the matter by moving for reunification, and on October 11, 1996, CCDHS stated on the record its intention to serve her with a complaint seeking permanent custody. However, after lengthy investigation, I see no indication that the remand order has been obeyed.

Either CCDHS has been derelict in failing to pursue permanent custody, or the Clermont County Court of Common Pleas has allowed the case to languish on remand. In either case, the effect has been to deny Holloway her parental rights without severing them judicially. The Supreme Court has long recognized that "[a] parent's interest in the accuracy and injus-

tice of the decision to terminate his or her parental status is ... a commanding one." *Lassiter*, 452 U.S. at 27, 101 S.Ct. 2153. Clermont County is under a clear obligation to comply with the edict of the Ohio Court of Appeals and to afford Ms. Holloway the hearing on her parental rights to which she is entitled.