886 F.2d 826
 58 USLW 2233, 14 Fed.R.Serv.3d 827
 James ACHTERHOF; Grace Achterhof, Plaintiffs-Appellants,
v.
Anthony F. SELVAGGIO, individually and as a Children's
Protective Services employee of the Department of Social
Services; Anna Meade, individually and as a Supervisor for
the Department of Social Services; Richard H. Ritter,
Individually and as the Director of the Barry County
Department of Social Services, jointly and severally,
Defendants-Appellees.
 No. 88-2213.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 7, 1989.
Decided Oct. 6, 1989.
 
 Vincent J. Leone and Becky M. Lamiman (argued), Asst. Attys. Gen., Tort Defense Div., Lansing, Mich., for defendants-appellees.
 Jon D. VanderPloeg (argued), Smith, Haughey, Rice & Roegge, Grand Rapids, Mich., for plaintiffs-appellants.
 Before MARTIN, MILBURN and RYAN, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 James and Grace Achterhof appeal the dismissal of their section 1983 action for state interference with the family relationship in violation of their rights to due process, equal protection and freedom of association. The district court dismissed the action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, we reverse.
 
 
 2
 When considering a motion to dismiss under Rule 12(b)(6), we accept as true the factual allegations in the complaint. Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 279 (6th Cir.1987) (en banc). On October 9, 1984, the Forest Hills Northern High School reported a case of suspected child abuse to the Kent County Department of Social Services in Kent County, Michigan. Officials at the high school noticed that Karen Achterhof, the daughter of James and Grace Achterhof, had suffered a minor injury to her face. They reported the case to the Michigan Department of Social Services pursuant to the Michigan's Child Protection Law, Mich.Comp.Laws Sec. 722.621 et seq. The injury resulted from an incident on October 7, 1984, when Karen apparently disobeyed a family rule. A family argument ensued in which James Achterhof slapped his daughter on the face.
 
 
 3
 Anthony Selvaggio, a social worker for the Michigan Department of Social Services in Barry County, but working in Kent County at the time, was assigned to the case on October 9, 1984. He allegedly "opened a case" and began his investigation with the approval of Ann Meade, his supervisor, and Richard Ritter, director of the Barry County Department of Social Services. Selvaggio also placed James Achterhof's name on the department's central registry, a record of all reports which contain relevant and accurate evidence of child abuse or neglect. James Achterhof's name remained on the central registry despite his request that the record be expunged. On February 20, 1985, Achterhof's name was expunged from the record following an administrative hearing pursuant to Mich.Comp.Laws Sec. 722.627(3). From November 8, 1984 until January 31, 1985 Selvaggio continued to contact Karen Achterhof.
 
 
 4
 As a result of this investigation, James and Grace Achterhof filed this lawsuit on January 28, 1988. An amended complaint was filed on February 3, 1988. In count I of their amended complaint the Achterhofs alleged that the investigation violated their rights to freedom of association and due process guaranteed by the first and fourteenth amendments by interfering with their family relationship. In count II the couple alleged that the defendants violated their rights to due process and equal protection under the fourteenth amendment by failing to remove James Achterhof's name from the central registry of child abuse reports. In count III the Achterhofs claimed that their rights to due process and freedom of association were violated by Selvaggio's continued contact with Karen Achterhof in the process of investigating the case. In count IV the Achterhofs alleged that Meade and Ritter were responsible for authorizing Selvaggio's actions. Counts V and VI stated that the defendants committed various torts against the Achterhofs under Michigan law.
 
 
 5
 On February 25, 1988, the defendant filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. On October 25, 1988, the district court entered an opinion and order dismissing the Achterhofs' complaint.
 
 
 6
 The court dismissed counts I and II of the complaint because it found that Selvaggio, Meade and Ritter enjoyed absolute immunity in deciding to "open a case," for placing James Achterhof's name on the central registry and for later refusing to remove it. The court noted that officials who perform "prosecutorial functions" are entitled to absolute immunity so that they may perform their duties free from intimidation and harassment. The court found that the decision to "open a case" and to place a person's name on the central registry under Michigan's Child Protection Law were strongly analogous to prosecutorial acts and thus entitled to absolute immunity. See, e.g., Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (prosecutorial immunity extended by analogy to executive branch officials charged with conducting administrative proceedings against individuals and corporations).
 
 
 7
 The district court dismissed count III because it found that Selvaggio's attempts to contact Karen Achterhof after the initial investigation were entitled to qualified immunity. Following the Fifth Circuit's decision in Hodorowski v. Ray, 844 F.2d 1210 (5th Cir.1988), and the Second Circuit's decision in Robison v. Via, 821 F.2d 913, 919 (2d Cir.1987), the district court concluded that Selvaggio's actions were "investigatory" in nature not "prosecutorial." The court then applied the standard for qualified immunity announced by the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and Andersen v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), as summarized by this court in Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). The district court found that in continuing to contact Karen Achterhof, Selveggio had not violated any "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.
 
 
 8
 The court dismissed count IV of the Achterhofs' complaint sua sponte under Rule 12(b)(6). The court found that this claim, directed against Selvaggio's superiors, Ritter and Meade, could not be sustained because it failed the standard for evaluating proximate cause in section 1983 cases announced by this court in Nishiyama v. Dickson County, Tennessee, 814 F.2d 277 (6th Cir.1987) (en banc). In Nishiyama we held, in part, following the Supreme Court's decision in Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), that a section 1983 claim for deprivation of a constitutional right may fail because the alleged deprivation may be too remote a consequence of governmental action to hold the state responsible. Nishiyama, 814 F.2d at 280-81. In count IV of their complaint, the Achterhofs complained that Ritter and Meade failed to properly select, discipline and control their employees, including Selvaggio, and that this failure made their misfortune possible. The district court held that the injury allegedly caused by Selvaggio's conduct was too remote a consequence of Ritter and Meade's actions to hold them responsible.
 
 
 9
 Because it dismissed all of the Achterhofs' federal claims, the district court also dismissed the pendant state claims of counts V and VI. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
 
 
 10
 The dismissal of the Achterhofs' complaint under Rule 12(b)(6) was improper in this case for two reasons. First, the district court incorrectly found that absolute immunity applied to the actions of Selvaggio complained of in counts I and II. Although section 1983 "on its face admits of no immunities," Malley v. Briggs, 475 U.S. 335, 339, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1986), the Supreme Court has interpreted the statute to include immunity defenses. Traditionally, absolute immunity has applied only to prosecutors, see Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and judges, see Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). Recently, the Court has expanded the application of absolute immunity to those government officials whose duties are functionally analogous to the duties of judges and prosecutors. See, e.g., Butz v. Economou, 438 U.S. 478, 514-15, 98 S.Ct. 2894, 2914-15, 57 L.Ed.2d 895 (1978).
 
 
 11
 The Court has been reluctant, however, to let this functional, analogical approach greatly expand the scope of absolute immunity. See, e.g., Malley, 475 U.S. at 341-43, 106 S.Ct. at 1096-97 (police officer who inappropriately sought arrest warrant, though similar to prosecutor seeking indictment, not protected by absolute immunity). The Court has declined to grant absolute immunity to those not "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430, 96 S.Ct. at 995. Section 1983 has been interpreted in this manner "not from an exaggerated esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." Malley, 475 U.S. at 342, 106 S.Ct. at 1097. Official conduct not entitled to absolute immunity can at most enjoy the protection of qualified immunity. See Harlow, 457 U.S. at 807, 102 S.Ct. at 2732.
 
 
 12
 In restricting absolute immunity to those functions intimately associated with the judicial process, courts have made use of the distinction between prosecutorial and judicial duties and duties which are administrative or investigatory. Although the Supreme Court has not expressly adopted this distinction, see Imbler, 424 U.S. at 430-31, 431 n. 33, 96 S.Ct. at 994-95, 995 n. 33, the Court has left standing appellate court cases which have utilized it. Id., at 430 n. 31, 96 S.Ct. at 995 n. 31. Recently the Court has recognized that it has "at least implicitly drawn the same distinction" in its cases, Harlow v. Fitzgerald, 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73 L.Ed.2d 396 (1982), and has continued to rely on the distinction in its own immunity analysis. See, e.g., Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) ("This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to peform."). Moreover, "the courts of appeals have generally held that prosecutors acting in their investigative or administrative capacities merit only qualified immunity." Windsor v. The Tennessean, 719 F.2d 155, 164 (6th Cir.1983) (citing Dellums v. Powell, 660 F.2d 802 (D.C.Cir.1981); Mancini v. Lester, 630 F.2d 990 (3d Cir.1980); Marrero v. City of Hialeah, 625 F.2d 499 (5th Cir.1980), cert. denied, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); Lee v. Willins, 617 F.2d 320 (2d Cir.), cert. denied, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir.1979), cert. denied, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981); Jacobson v. Rose, 592 F.2d 515 (9th Cir.1978), cert. denied, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979)). The distinction has continued to be a pivotal part of immunity analysis in this Circuit. See, e.g., Manion v. Michigan Bd. of Medicine, 765 F.2d 590 (6th Cir.1985); Joseph v. Patterson, 795 F.2d 549 (6th Cir.1986); Grant v. Hollenbach, 870 F.2d 1135 (6th Cir.1989).
 
 
 13
 In accord with this approach, we have recognized that social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity. Salyer v. Patrick, 874 F.2d 374 (6th Cir.1989) (family service worker who filed juvenile abuse petition absolutely immune from liability); Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir.1984) (state employees responsible for prosecution of child neglect and delinquency petitions entitled to absolute immunity). Other federal courts have resolved similar problems in the same fashion. See, e.g., Coverdell v. Dept. of Social and Health Services, 834 F.2d 758, 762-64 (9th Cir.1987) (absolute immunity for social worker who obtains ex parte court order directing seizure of child); Malachowski v. City of Keene, 787 F.2d 704, 712 (1st Cir.), cert. denied, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986) (absolute immunity for juvenile officer filing delinquency petition). We have not, however, decided what level of immunity applies to social workers who simply begin an investigation of alleged child abuse. See Salyer, 874 F.2d at 378. The present case requires us to decide this issue now.
 
 
 14
 It is undeniable that Selvaggio's investigation could have led to criminal prosecution. Indeed, Mich.Comp.Laws Sec. 722.628 provides that the Michigan Department of Social Services "shall refer the report to the prosecuting attorney if the report meets the requirements of section [722.623(6) ]...." Mich.Comp.Laws Sec. 722.623(6) provides for prosecution of child abusers under the Michigan penal code. Section 722.628(2) also requires the Department of Social Services to "cooperate with law enforcement officials, courts of competent jurisdiction, and appropriate state agencies providing human services in relation to preventing, identifying and treating child abuse and neglect...."
 
 
 15
 Despite the possibility that criminal prosecution might have resulted from Selvaggio's investigation, his decision to "open a case" was not entitled to absolute immunity. This decision was only investigatory or administrative in nature, not prosecutorial, judicial or otherwise intimately related to the judicial process. Selvaggio did not initiate any court action in the role of a prosecutor, nor did he sit as a judge in an adversary proceeding. His work was investigatory. Indeed, it was investigatory work of the most ordinary kind since it was mandated by the statute. Under Mich.Comp.Laws Sec. 722.628 neither Selvaggio nor anyone else in the Department of Social Services could have refrained from investigating the matter once the officials at the Forest Hills Northern High School filed a report. Section 722.628(1) provides, in part, that "[w]ithin 24 hours after receiving a report made pursuant to this act, the department shall refer the report to the prosecuting attorney if the report meets the requirements of section [722.623(6) ] or shall commence an investigation of the child suspected of being abused or neglected." The statute, moreover, provides that even if a criminal investigation or prosecution takes place, it does not "relieve the department of its responsibility to investigate reports of suspected child abuse or neglect under this act." Mich.Comp.Laws Sec. 722.623(7). Even though the department did not refer the Achterhof report to the prosecuting attorney for Kent County, the department was required to begin an investigation itself. Section 722.628(2) provides that "[i]n the course of its investigation, the department shall determine if the child is abused or neglected." If, as the Achterhofs allege, Selvaggio chose to continue his investigation after an initial investigation revealed no evidence of child abuse, then this action was also investigatory not prosecutorial.
 
 
 16
 Similarly, Selvaggio's placement of James Achterhof's name on the central registry was not entitled to absolute immunity. This action was administrative in nature, not prosecutorial. Mich.Comp.Laws Sec. 722.627(1) requires the Department of Social Services to "maintain a central registry to carry out the intent of this act." This registry is supposed to contain only those reports "in which relevant and accurate evidence of child abuse or neglect is found to exist...." Mich.Comp.Laws Sec. 722.622(a). It appears, however, that once a report is filed with the department pursuant to the statute, it is immediately entered into the central registry system. To remedy those cases where a report has been improperly added to the registry section 722.627(3) provides that "[i]f the investigation of a report ... fails to disclose evidence of abuse or neglect, the information identifying the subject of the report shall be expunged from the central registry." The statute further provides that "[a] person who is the subject of a report or record ... may request the department to expunge from the central registry a report or record in which no relevant and accurate evidence of abuse or neglect is found to exist." It appears that the placement of Achterhof on the central registry was, like the initial investigation of the case, mandated by the statute. This action was an administrative function not intimately related with the judicial process. If, as the Achterhofs allege, Selvaggio chose to maintain James Achterhof's name on the registry after an initial investigation revealed no accurate and relevant evidence of child abuse, then this decision was not entitled to absolute immunity since it too was administrative in nature, not prosecutorial.
 
 
 17
 The dismissal of the Achterhofs' complaint under Rule 12(b)(6) is also flawed because an incorrect standard of evaluation was applied to the motion to dismiss under Rule 12(b)(6). "The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nishiyama, 814 F.2d at 279 (citing Windsor v. Tennessean, 719 F.2d at 158; Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)). See also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). The district court failed to apply this standard both with regard to the defendants' alleged immunity and with regard to certain factual issues. A plaintiff bringing a section 1983 action should, as a matter of course, "include in the original complaint all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." Dominque v. Telb, 831 F.2d 673, 676 (6th Cir.1987). If the plaintiff fails to make such allegations, "the court must accord the plaintiff an opportunity to come forward with such additional facts or allegations...." Id. The district court failed to accord the Achterhofs such an opportunity in the present case. It may be the case that the defendants' qualified immunity cannot be resolved on the pleadings. If this is so, "then presumably the district court can so hold, and the matter may then either be appealed or proceed on to the discovery stage, after which it might be possible to resolve the issue by appropriate motion for summary judgment." Id. at 677. (citing Anderson v. Creighton, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6).
 
 
 18
 The judgment which dismissed the complaint under Fed.R.Civ.P. 12(b)(6) is reversed.