**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 04a0095n.06**
**Filed: November 17, 2004**

**No. 03-3904**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **Stambaugh, et al.,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| **Corrpro Companies, et al.,** | ) | **NORTHERN DISTRICT OF OHIO** |
| | ) | |
| **Defendants-Appellees.** | ) | |

Before: Siler, Batchelder, and Rogers, Circuit Judges.

**Rogers, Circuit Judge.** Leviticus Partners, L.P. ("Leviticus"), representing a class of similarly situated holders of common stock in Corrpro Companies, Inc. ("Corrpro"), appeals from the district court's dismissal of Leviticus's complaint alleging that Corrpro and various Corrpro executives committed securities fraud. Leviticus maintains that the district court erred in dismissing the complaint because the totality of the allegations contained in the complaint gave rise to a strong inference of scienter. Moreover, Leviticus contends that even if the complaint failed sufficiently to create a strong inference of scienter, the district court should have granted Leviticus leave to amend the complaint. Because we find the arguments of Leviticus unpersuasive, we affirm the judgment of the district court.

## I. BACKGROUND

Corrpro, an Ohio corporation with its principal place of business in Medina, is an engineering firm that provides services and materials related to corrosion control. Corrpro was investigated by the SEC in the mid-1990s regarding accounting irregularities that occurred during the 1995 fiscal year. That investigation resulted in the SEC's issuance of two cease-and-desist letters for failing to implement adequate accounting controls. Around the same time that the SEC investigation was concluded, the EPA changed the regulations regarding corrosion protection for underground storage tanks ("UST"). The new regulations caused Corrpro to experience losses in a substantial portion of its business; therefore, in 1999 and 2000, Corrpro began to move to other corrosion related pursuits and acquired interests in a number of foreign corrosion protection companies. One of these companies was Corrpro Australia, which accounted for between 4.5% and 5% of Corrpro's revenues during 2001 and 2002.

During this period, Corrpro entered into two debt agreements worth a combined $110 million. Both debt agreements required Corrpro to comply with specific ratios of debt to earnings before income taxes, depreciation, and amortization ("EBITDA"), in order to avoid default. Part of the Corrpro debt carried variable rate interest so that Corrpro's interest payments increased substantially between 1999 and 2001. In 2001, Corrpro began to experience difficulties. First, the New York Stock Exchange ("NYSE") notified Corrpro that Corrpro had insufficient capitalization

and shareholder equity to remain listed on the exchange. Although Corrpro and the NYSE agreed to a plan for Corrpro to comply with the listing requirements, Corrpro subsequently transferred to the American Stock Exchange.

In March 2002, Corrpro announced that it had discovered misconduct at Corrpro Australia which resulted in accounting irregularities, and that Corrpro would reduce its pretax earnings by between $5.3 million and $6.7 million for the fourth quarter ending March 31, 2002, to account for an earlier overstatement of its pretax earnings. Corrpro's EBITDA for fiscal year 2001, originally reported at $10.8 million, dropped to $3.47 million after the revenue restatement. Corrpro's reported earnings for fiscal year 2002 were restated to a net loss of $54,000. Meanwhile, in Australia, Corrpro Australia entered Voluntary Administrative Proceedings, which are the Australian equivalent of bankruptcy reorganization.

## II. THE COMPLAINT

On December 19, 2000, Leviticus filed a two-count complaint on behalf of the class in the district court. Leviticus maintained that "Defendants intentionally, or recklessly, failed to ensure that the financial results purportedly achieved by [Corrpro's] newly-acquired entities were reliable and accurate, in order to minimize the adverse effects of [Corrpro's] declining business, including the affect [sic] on its various credit agreements." Complaint ¶ 8. As a result, Leviticus alleged, Corrpro "materially overstated revenues and understated expenses in its Australian subsidiary" in

order "to minimize the adverse impact of [Corrpro's] declining business on Corrpro's ability to satisfy its financial requirements under" its debt agreements. Complaint ¶ 11.

Leviticus identified a number of public statements issued by Corrpro or the individual defendants that Leviticus alleged were intentionally or recklessly false and misleading. Leviticus's complaint appears to maintain that Corrpro's internal accounting problems from the mid-1990s and the resulting SEC enforcement action should have placed Corrpro on notice that it needed "to institute adequate internal accounting controls to ensure that the financial results reported by its recently-acquired entities, including Corrpro Australia, were reliable and accurate." Complaint ¶ 61. Instead, according to the complaint, Corrpro Australia's internal controls broke down entirely, allowing the subsidiary to report results for fiscal year 2001 that were overstated by $10 million Australian. Complaint ¶¶ 62-63. Consequently, Leviticus alleged, Corrpro overstated its own results, at least recklessly ignoring the lack of accounting controls at Corrpro Australia.

Leviticus alleged that Corrpro and the individual defendants were motivated to defraud investors by two considerations. First, Corrpro was under heavy pressure from its creditors to maintain the debt-to-earnings ratios provided in the debt agreements. Complaint ¶ 45. As Corrpro's business declined and the company struggled to remain profitable, according to Leviticus, Corrpro's creditors increased the pressure by amending the terms of the debt agreements when Corrpro was unable to comply. Complaint ¶¶ 47-55. In order to avoid the unpleasant consequences of continued defaults under the debt agreements, Corrpro and the individual defendants allegedly lied about Corrpro's earnings. Complaint ¶¶ 56, 151. Second, Leviticus alleged that Corrpro and the

defendants were motivated to defraud investors "by the specter of delisting by the NYSE." Complaint ¶ 152.

The primary front on which Corrpro allegedly executed the scheme to defraud investors was through its quarterly earnings reports. Leviticus alleged that each of Corrpro's formal and informal earnings reports during fiscal years 2001 and 2002 substantially overstated EBIDTA, net income, earnings per share and stockholder equity. After each of these "false and misleading" earnings statements, Leviticus identified a concomitant increase in the price of Corrpro's common stock. *See, e.g.*, Complaint ¶ 68. Corrpro allegedly produced these erroneous earnings statements by violating generally accepted accounting principles, specifically Financial Accounting Concept No. 5, which provides:

> Revenues and gains of an enterprise during a period are generally measured by the exchange values of the assets (goods or services) or liabilities involved, and recognition involves consideration of two factors (a) being realized or realizable and (b) being earned, with sometimes one and sometimes the other being the more important consideration.

Statement of Financial Accounting Concepts No. 5 (*quoted in* Complaint ¶ 143). Leviticus did not specify how Corrpro's accounting practices violated this particular accounting principle.

The complaint asserted that Corrpro and the individual defendants acted with scienter in knowingly or recklessly disseminating false financial information. Complaint ¶ 145. First,

Leviticus maintained that the defendants acted with scienter because the prior SEC enforcement action alerted them to the inadequacy of internal accounting controls at Corrpro. Complaint ¶ 146. Second, the complaint alleged that the defendants were at least reckless because they failed to identify the accounting irregularities at Corrpro Australia for twenty months. Complaint ¶ 147. Third, Leviticus alleged that the defendants knowingly or recklessly released misleading financial data because Corrpro was required to make monthly reports to its creditors. Complaint ¶ 148. Fourth, Leviticus claimed that Corrpro's recklessness in its financial reporting is demonstrated by the fact that Corrpro had a high turnover in the chief financial officer ("CFO") position. Complaint ¶ 149.

## III. THE DISTRICT COURT OPINION

Corrpro responded to the complaint with a motion to dismiss, arguing that Leviticus's allegations failed to satisfy the heightened pleading standard of the Private Securities Litigation Reform Act, P.L. 104-67, December 22, 1995, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C.) ("PSLRA"), in that it failed to plead scienter with an adequate level of particularity. The district court agreed and dismissed the complaint.

With regard to the misstatements of income and the length of time over which Corrpro allegedly disregarded accounting irregularities at the Australian subsidiary, the district court concluded that there were no "red flags" indicating that Corrpro or the individual defendants willfully or recklessly disregarded the existence of accounting irregularities that gave rise to a strong

inference of scienter. *In re Corrpro Securities Litigation*, No. 1:02CV1198, 2003 WL 23138459, at *4 (N.D. Ohio May 27, 2003). The district court further reasoned that Leviticus failed to establish an inference of scienter from the prior SEC enforcement action because the complaint contained no allegation "establishing that current officers should have reason to know of accounting irregularities occurring at an Australian subsidiary." *Id.* at *5.

Moreover, the district court concluded that the resignations of officers were immaterial because the complaint failed to "establish any connection between the job turnover and the problems at Corrpro Australia" and because two of the identified employees were hired on an interim basis only. *Id.* at *6. The district court further noted that the issuance of the inaccurate financial data did not lead to the conclusion that the defendants were aware that Corrpro Australia's accounting was irregular and incorrect. *Id.*

The district court rejected Leviticus's contention that the scienter requirement may be satisfied by alleging motive and opportunity to commit fraud alone. While recognizing that motive and opportunity are relevant, the district court held that Leviticus's allegations of motive and opportunity amounted to "an unsupported assertion that the defendants' covenants could have motivated their alleged misconduct," lacking any showing that the defendants knew or should have known of the inaccuracies in its financial reports. *Id.* at *7. Moreover, the district court reasoned, Leviticus failed to show that Corrpro or any of the individual defendants benefitted from, or stood to benefit from, the alleged fraud. *Id.*

The district court further concluded that the complaint failed to satisfy the Rule 9(b) standard for pleading claims of fraud with particularity. *Id.* at *8. In so doing, the district court explained that the complaint "alleges no facts showing that the defendants knew or could have known of Corrpro Australia's errors or that the regular procedures should have alerted them to Corrpro Australia's misconduct earlier than they actually did." *Id.* Without more, in the view of the district court, "[t]here is no reason why these defendants, who were not the persons being investigated, should know of improprieties of a new subsidiary from a prior investigation nor are there any other documents showing that the defendants knew of the problems at Corrpro Australia." *Id.*

## IV. ANALYSIS

Before addressing Leviticus's arguments that the district court erred in dismissing its complaint, this court must first address an argument made by Corrpro that the district court judgment must be summarily affirmed because Leviticus failed to appeal an "alternate" ground of that decision. As discussed above, the district court ruled both that Leviticus had failed to allege particularized facts giving rise to a strong inference of scienter, as required by the PSLRA, and that Leviticus failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Corrpro now argues that Leviticus, in its appellants' brief, failed to dispute the district court's decision with respect to Fed. R. Civ. P 9(b), that this constitutes a waiver of any argument that the Rule 9(b) ruling was incorrect, and that therefore the district court's decision should be summarily affirmed because one basis of that decision has not been appealed.

If a party does not raise an issue in its appellant's brief, then that issue is waived. *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002). The appellant's brief must include both a statement of the issue and arguments on the issue. *Id.* at 517; *see also* Fed. R. App. P. 28(a). Leviticus's appellant's brief did state that the Rule 9(b) dismissal was an issue being appealed. *See* Brief of Plaintiffs-Appellants at 1-2. However, Leviticus did not separately argue that its complaint satisfied Rule 9(b); rather, Leviticus only argued that the complaint had adequately pled scienter, as required by the PSLRA.

In this case, although the issue is close, Leviticus's arguments regarding scienter are sufficient to preserve its appeal of the Rule 9(b) dismissal. We do not generally condone making arguments by inference. In this case, the district court's ruling that the complaint failed to satisfy Fed. R. Civ. P. 9(b) revolved entirely around the requirement that a plaintiff allege fraudulent intent. *In re Corrpro Securities Litigation*, 2003 WL 23138459, at *8. The district court's explanation of how the complaint failed to allege fraudulent intent mirrors its explanation of how the complaint failed to plead scienter as required by the PSLRA. Therefore, if Leviticus is correct that the complaint satisfies the PSLRA's pleading standard, then the complaint would also satisfy Rule 9(b). The inference that Appellants also challenge the district court's alternative ground is thus sufficiently clear, and this court can consider the merits of Leviticus's appeal.

Turning to Leviticus's appeal, we find that the district court correctly dismissed the complaint because it failed to plead facts giving rise to a strong inference of scienter. The standard of review is de novo. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 547(6th Cir. 1999). In order

to survive a Rule 12(b)(6) motion in a securities fraud action, the plaintiffs must plead sufficient facts to raise a strong inference of scienter. The PSLRA provides that

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). The required state of mind has been referred to as the knowing and deliberate intent to manipulate, deceive, or defraud, but recklessness may also constitute scienter. *In re Comshare Inc. Sec. Litig.*, 183 F.3d at 550.

There has always been a higher level of particularity required in pleading claims for fraud, which trumps the generally accepted rule that the district court must deny a motion to dismiss the complaint unless "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989); *see* Fed. R. Civ. P. 9(b). In the PSLRA, however, Congress raised the bar even higher, requiring plaintiffs in securities fraud cases to plead their claims with particularity that creates the strong inference that the defendant acted with the required state of mind. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 548 (6th Cir. 2001) (en banc).

Leviticus identifies six factual circumstances alleged in its complaint that it contends give rise to a strong inference of scienter: (1) the magnitude of the restatement of earnings; (2) the failure to implement adequate accounting controls; (3) the duration of the fraudulent activity; (4) the suspicious resignations of executives from Corrpro and Corrpro Australia, particularly the resignations of five CFOs from Corrpro within an eighteen month period; (5) that Corrpro's foreign holdings comprised a "material component of [Corrpro's] business following the regulatory change in the U.S., which caused the demise of Corrpro's UST business;" and (6) amendments to Corrpro's debt agreements requiring it to submit monthly financial reports to its lenders. Appellants' Br. at 12. As the district court recognized, under the PSLRA, "the 'strong inference' requirement means that plaintiffs are entitled only to the most plausible of competing inferences." *Helwig*, 251 F.3d at 553; *see In re Corrpro Securities Litigation*, 2003 WL 23138459, at *2. For the reasons given by the district court, none of the factual circumstances alleged by Leviticus give rise to a strong inference of scienter. However, Leviticus also contends that the district court erroneously considered each of these factual circumstances in a piecemeal fashion rather than in the aggregate, and had it not considered the facts individually, it would have derived a strong inference of scienter.

We are not convinced that the district court failed to consider the factual allegations in the aggregate; but in any case, as the standard of review is de novo, *see In re Comshare Inc. Sec. Litig.*, 183 F.3d at 547, we proceed to determine whether the allegations in the aggregate give rise to a strong inference of scienter. The inescapable inference from the allegations in the complaint is that Corrpro was a poorly-run business and that Corrpro executives in the United States failed to monitor

closely the accounting controls of its foreign subsidiaries. Unfortunately for Leviticus, that inference does not suggest the minimum required state of mind of recklessness, strongly or otherwise. Even taking for granted Leviticus's assumption that Corrpro had inadequate accounting controls in place and failed responsibly to monitor the accounting controls at Corrpro Australia, the strongest inference created by the complaint's allegations is that Corrpro's managers were negligent. Several of the individual allegations do not create any inference of scienter at all; therefore, even in combination, they cannot make the inference of scienter "strong." For example, it is hard to see how the fact that the alleged misstatements were made over a period of twenty months, when considered in conjunction with the fact that a number of CFOs resigned, creates a *stronger* inference of scienter than either fact considered separately. Rather, the more plausible explanation is that the long period of mismanagement caused Corrpro to go through more CFOs than it would have if the period of mismanagement were short.

In sum, the district court correctly dismissed this complaint because Leviticus's allegations, even considered in their totality, do not create a strong inference of scienter.

Finally, we turn to the issue of whether the district court erred in "failing" to grant Leviticus leave to amend its complaint. The district court did not err in dismissing the complaint with prejudice nor in failing to grant leave to amend because Leviticus never sought leave to amend the complaint, and because even if they had sought leave, it should have been denied in this case. The standard of review is abuse of discretion. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)

This case is analogous to our recent decision in *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004). In that case, the plaintiffs failed to follow the proper procedure for filing a motion for leave to amend, choosing rather to include a bare statement requesting leave to amend in their brief in opposition to the defendants' motion to dismiss. *Id.* at 699. This court held that the district court did not abuse its discretion in refusing to grant leave to amend the complaint. *Id.* Here, Leviticus did not even include such a bare statement requesting leave to amend, and so it was clearly within the district court's discretion not to grant leave to amend. "[A] district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991).

Additionally, although the general rule is that leave to amend is freely given in the interests of justice, the PSLRA restricts the availability of amendments in the securities fraud context. *PR Diamonds, Inc.*, 364 F.3d at 699-700 (citing *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003)). The PSLRA's heightened pleading standards reflect a legislative goal to eliminate securities fraud suits lacking a factual basis at the pleading stage. *See id.* at 700. Moreover, Leviticus has not offered any indication of the allegations that would be contained in an amended complaint. Even under the comparatively relaxed standards of Rule 15(a), a plaintiff must still offer some additional information so that the district court may determine whether the interests of justice indeed require a granting of leave to amend. *See Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906-07 (6th Cir. 2002). The PSLRA undeniably increases the standard. *See*

*Miller*, 346 F.3d at 692.  Therefore, even if Leviticus had sought leave to amend, it would have been within the district court's discretion to withhold granting that leave.

Accordingly, the judgment of the district court is AFFIRMED.