NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1205n.06

No. 11-5994

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 21, 2012*
DEBORAH S. HUNT, Clerk

BRADFORD A. QUATKEMEYER, M.D., )
)
    Plaintiff-Appellant, )
)
v. )
) ON APPEAL FROM THE UNITED
KENTUCKY BOARD OF MEDICAL ) STATES DISTRICT COURT FOR THE
LICENSURE, *et al.*, ) WESTERN DISTRICT OF KENTUCKY
)
    Defendants-Appellees. ) **OPINION**

Before: ROGERS and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

**BENITA Y. PEARSON, District Judge.**

Dr. Bradford A. Quatkemeyer ("Plaintiff") appeals the district court's order dismissing his claims against the Kentucky Board of Medical Licensure ("Board") in this action alleging mail fraud and a violation of due process rights brought pursuant to 42 U.S.C. § 1983.

Plaintiff requests that we reverse the district court's order and remand the case to the district court for further proceedings. Because the Board is entitled to absolute immunity, we affirm the district court's dismissal on alternative grounds.

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

**I. Factual and Procedural Background**

Plaintiff is a physician licensed to practice medicine in the Commonwealth of Kentucky. In 2007, a grievance was filed against Plaintiff by a relative of one of his patients. The grievance alleged that Plaintiff, by prescribing controlled substances "inappropriately and excessively," was enabling illegal drug use by the patient.

The Board of Medical Licensure,[1] an agency of the Commonwealth of Kentucky, conducted an investigation into Plaintiff's practice. The Board found that it was necessary to issue a Complaint[2] and an Emergency Order of Restriction, which prohibited Plaintiff's professional access to controlled substances until the conclusion of the proceedings. The Board subsequently issued an Order of Probation against Plaintiff. Plaintiff requested a hearing, pursuant to his right under the Kentucky Revised Statutes, and after the hearing, the Board affirmed its decision.

After exhausting the administrative remedies at his disposal, Plaintiff filed a petition for review in the Jefferson Circuit Court. He requested a Temporary Injunction, which was denied. The Board's decisions were affirmed by the Circuit Court. Plaintiff filed an appeal, which currently awaits resolution in the Kentucky Court of Appeals.

Plaintiff filed a lawsuit in the Western District of Kentucky on the same day he filed in Jefferson Circuit Court. The Amended Complaint contains four causes of action:

---

[1] The Board's creation and procedures are codified in KRS 311.555 *et seq.*

[2] The Complaint is not a legal complaint, but a formal action against Plaintiff as a member of the professional organization.

2

> (1) the Board and its members violated his due process rights under the Fourteenth Amendment when they issued the final order of probation; (2) the Board and its members violated his due process rights under the Fourteenth Amendment when they circulated false and injurious statements about him that damaged his reputation; (3) the Board committed mail fraud when its agents sent false statements about him through the mails; and (4) the Board and its members violated his due process rights under the Fourteenth Amendment when they issued the emergency order of restriction without first affording Plaintiff notice and an opportunity to be heard.

The Board moved to dismiss based upon the doctrine of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971).[3] The district court determined that abstention was appropriate for the constitutional claims, and granted a stay of those claims until a decision was rendered by the Jefferson Circuit Court. As to the claim for mail fraud, the district court found that the Board was a state agency entitled to Eleventh Amendment immunity, and dismissed the claim with prejudice in a non-final order.

Upon notice of the state court decision favoring the Board, the district court dismissed Plaintiff's remaining claims. It reasoned that abstention remained appropriate, and that the claims stayed in the previous, non-final order should be dismissed. In a footnote, the district court posited

---

[3] In *Younger*, the Supreme Court held that federal courts should refrain from interfering in a pending state criminal law enforcement process. 401 U.S. 37 (1971). Several years later, the Supreme Court clarified that the *Younger* abstention doctrine applies to civil proceedings in state court. *Trainor v. Hernandez*, 431 U.S. 434 (1977). The Sixth Circuit has held that "[u]nder *Younger* abstention . . . a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008). Although Plaintiff's state and district court claims were not identical, they were sufficiently parallel that the district court stayed the proceedings until the state court considered the claims.

3

that the individual members of the Board probably had quasi-judicial immunity from suit. The

footnote in the final order states as follows:

> The Court also believes that the individual board members of the Kentucky Board of Medical Licensure are [] immune from lawsuits arising from their actions as prosecutors or judges during Plaintiff's administrative process. *See Butz v. Economou*, 438 U.S. 478 (1978); *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992).
>
> . . . upon reviewing the full procedural history of these proceedings, the Board appears to have followed its established rules and regulations.

*Quatkemeyer v. Ky. Bd. of Med. Licensure*, No. 3:09-cv-746 (W.D. Ky. filed July 11, 2011).

Plaintiff appeals.

## II. Jurisdiction and Standard of Review

The Court has jurisdiction to review a timely appeal of a final order of the district court

pursuant to 28 U.S.C. § 1291. We review *de novo* a district court's decision to abstain under

*Younger*. *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995). We review a district court's grant of a

motion to dismiss *de novo*. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th

Cir. 2009). We must construe the complaint in the light most favorable to the plaintiff and accept

all allegations as true. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). However,

"[f]actual allegations must be enough to raise a right to relief above the speculative level" and to

"state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555, 570 (2007).

## III. Discussion

### A. Quasi-Judicial Immunity

The parties agree that the only issue presented to the Court is whether the Board is entitled to quasi-judicial immunity.[4] During the proceedings in district court, the Board argued that Plaintiff's claims for damages against Board members in their individual capacities should be dismissed with prejudice on the grounds that they were entitled to quasi-judicial immunity. At that juncture, the district court concluded that deciding the issue would go against the purpose of abstention as it would interfere with the ruling of the state court. We may affirm a district court's

---

[4] During oral argument, the following exchange occurred between the Court and the Board's counsel, Mr. Vest:

> Mr. Vest: We agree . . . that you can affirm the decision of the district court on the grounds of quasi-judicial immunity even if it's not clear from the order whether Judge Heyburn rested squarely on that issue or not.
>
> Court: Indeed, that is your only argument.
>
> Mr. Vest: It is our argument.
>
> Court: It's your only argument.
>
> Mr. Vest: You're correct, your honor.
>
> Court: So you concede that a stay rather than dismissal is appropriate.
>
> Mr. Vest: Cases indicate . . . when you're talking about money damages . . . that the district court should stay rather than dismiss . . . .

Oral arg. 13:15.

judgment on grounds not relied upon by the district court. *E.g. Dismas Charities, Inc. v. United States DOJ*, 401 F.3d 666, 677 (6th Cir. 2005).

Absolute immunity against suits for money damages is "well established" for judges, and such immunity has also been extended to non-judicial officers performing "quasi-judicial" duties. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1108 (9th Cir. 1987) ("Quasi-judicial immunity, like judicial immunity, derives historically from the recognition that participation in the court system raises a significant risk of 'entanglement in vexatious litigation.'") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985)). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847. "The Supreme Court has endorsed a 'functional approach in determining whether an official is entitled to absolute immunity. Under this approach, a court 'looks to' the nature of the function performed, not the identity of the actor who performed it.'" *Collyer v. Darling*, 98 F.3d 211, 221 (6th Cir. 1996) (citation omitted) (quoting *Bush*, 38 F.3d at 847). The party claiming absolute immunity bears the burden of establishing a justification for that immunity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993); *Burns v. Reed*, 500 U.S. 478, 486 (1991). To determine whether the doctrine of judicial immunity applies to officials other than judges, a court must determine whether performance of a function requires exercise of discretionary judgment. *Antoine*, 508 U.S. at 436; *see also Imbler v. Pachtman*, 424 U.S. 409, 422-24 (1976).

The Supreme Court has ruled upon the applicability of quasi-judicial immunity to state agencies:

> Because the legal remedies already available to the defendant in [an agency enforcement] proceeding provide sufficient checks on agency zeal, we hold that those [agency] officials [who perform certain functions analogous to those of a prosecutor and] who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Butz v. Economou*, 438 U.S. 478, 516 (1978).

It is undisputed that the Kentucky Board of Medical Licensure is a state agency. Previously, *Butz* has been applied to medical licensing boards, granting the members of the boards absolute immunity when sued for damages in their individual capacity. *See Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992); *Bettencourt v. Bd. of Registration in Med. of Mass.*, 904 F.2d 772 (1st Cir. 1990); *Horwitz v. State Bd. of Med. Exam'rs of Colo.*, 822 F.2d 1508 (10th Cir. 1987). Pursuant to the "functional" approach that was adopted in *Forrester v. White*, 484 U.S. 219, 224 (1988), the determination is centered upon the action of the individual. As explained in *Bush*: "a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available." 38 F.3d at 847 (citations omitted). Thus, while members of state medical boards may receive immunity, it is not presumed merely because they are members of those boards.

The members of the Kentucky Board of Medical Licensure exercise the requisite adjudicatory functioning for quasi-judicial immunity. The Board exercises authority over medical practitioners in Kentucky and has authority to issue subpoenas, conduct various levels of inquiries, make findings and issue different orders. *See* KRS § 311.591. By allowing its determination to be reviewed by the

courts, rather than another agency body or third party arbitrator, the Board provides one who is dissatisfied ample opportunity to seek redress. *See* KRS § 311.593.

### B. Board Functions

Plaintiff argues that the Board members were investigating and instituting disciplinary procedures, rather than acting in a prosecutorial or judicial manner, and cites *Achterhof v. Selvaggio, 886 F.2d 826 (6th Cir. 1989)*. In *Achterhof*, we found that a social worker who "simply begin[s] an investigation of alleged child abuse" is not entitled to quasi-judicial immunity. *Id*. at 830. We distinguished *Achterhof* from a line of cases granting immunity to social workers because the social workers who initiated the judicial proceedings in the previous cases were performing a prosecutorial duty. *Id*. (citing *Salyer v. Patrick, 874 F.2d 374 (6th Cir. 1989)* (family service worker who filed juvenile abuse petition absolutely immune from liability); *Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir. 1984)* (state employees responsible for prosecution of child neglect and delinquency petitions entitled to absolute immunity)). The social worker in *Achterhof* investigated the plaintiff as mandated by statute, and we held that his decision to "open a case" was only investigatory or administrative in nature, as was placing the plaintiff's name on a central registry. 886 F.2d at 830. Plaintiff argues that because he challenges the Board's investigation and the manner in which it instituted disciplinary procedures, it follows, as in *Achterhof*, that quasi-judicial immunity does not apply.

Plaintiff's argument is misplaced. The challenged acts he describes, such as relying upon wrong analyses and false allegations, are prosecutorial in nature. If Plaintiff's contention is that the Board failed to properly consider the evidence, such failure would not negate immunity. The

function and action of the Board was prosecutorial or adjudicatory in nature, regardless of how ineffectively the Board may have performed it.

### C. Board Safeguards

Plaintiff alleges the Kentucky Medical Board does not have the appropriate safeguards that were present in *Watts* and, therefore, pursuant to *Cleavinger v. Saxner*, 474 U.S. 193 (1985), absolute immunity does not exist. In *Watts*, a physician filed a § 1983 action against the members of the Tennessee Board of Medical Examiners individually for damages based upon violations of due process and equal protection. 978 F.2d at 271-72. Having found it persuasive that all members of the Tennessee Board were physicians, we determined the members were "independent professionals" entitled to quasi-judicial immunity and reversed the district court decision. *Id.* at 274, 276.

In *Cleavinger*, the Supreme Court determined that disciplinary committee members lacked the independence that characterizes judges and therefore were not entitled to quasi-judicial immunity. 474 U.S. at 203. The committee in *Cleavinger* was composed of Bureau of Prison employees who were direct subordinates of the warden who reviewed their decisions, and were "under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee." *Id*. at 204. They were not impartial and the hearing body was not detached or neutral. *Id.*

While it is correct to say neither the facts nor the statutory guidelines in the instant case are identical to those in *Watts*, this case is far more analogous to *Watts* than *Cleavinger*. Here, the Board is comprised of independent professionals whom were not direct subordinates of the person or entity that appoints them. Further, no party alleges its decisions were reviewed by the Governor. Also, the

Board is comprised of fifteen members: eleven are licensed physicians; one is an osteopathic physician; and the remaining three are representatives of healthcare consumer organizations who are not associated with or financially interested in the business regulated. *See* KRS § 311.530.[5] The board in *Watts* consisted of five members whom were required by statute to be professionals. *Watts, 978 F.2d at 275*. However, the slight differences in the makeup of the Board in the instant case and *Watts* do not result in a denial of immunity as long as the Board is made up primarily of professionals and required to be independent.

Plaintiff further attempts to distinguish this case as lacking the proper safeguards found in *Watts*. Plaintiff argues he was not provided with notice of the specific charges against him prior to the issuance of the Emergency Order of Restriction, in contrast with the plaintiff in *Watts* whom, Plaintiff alleges, was provided with specific notice of the nature of the charges against him before

---

[5] KRS § 311.530(2) requires that the Board consist of fifteen members, "including the commissioner of public health, the dean of the University of Kentucky College of Medicine, the vice dean for clinical affairs of the University of Louisville School of Medicine, the dean of the University of Pikeville School of Osteopathic Medicine, and eleven (11) members appointed by the Governor." Of the Governor's appointees, § 311.530(3) provides that:

(a) One (1) member shall be a licensed osteopathic physician and shall be appointed from a list of three (3) names submitted by the Kentucky Osteopathic Association;

(b) Seven (7) members shall be licensed medical physicians and may be appointed from a list of three (3) names submitted for each position by the Kentucky Medical Association. In making appointments under this paragraph, the Governor shall ensure that the physician members represent different specialties from a broad cross section of the medical profession; and

(c) Three (3) members shall be citizens at large who are representatives of any recognized consumer advocacy groups with an interest in the delivery of health care and are not associated with or financially interested in the practice or business regulated.

10

the summary suspension was issued. However, in *Watts*, the plaintiff's "due process claim rested on allegations that the proceedings before the board were defective because, among other things, the charges had not been stated with sufficient specificity[.]" *Watts*, 978 F.2d at 272. Plaintiff also argues the Board's designated Hearing Officer who conducted the hearing was biased and, as a lawyer rather than a medical professional, did not satisfy the procedural safeguards evident in *Watts* and established in *Butz*. The fact that the Hearing Officer in the instant case was a lawyer appointed by the Board does not render him biased or the procedural safeguards inadequate.

Plaintiff claims numerous other distinctions from *Watts*, arguing: that his case was heard by the Hearing Officer instead of a tribunal, as in *Watts*; that the burden of proof required to allow an Emergency Order of Restriction is lower pursuant to the Kentucky statute than the Tennessee statute in *Watts*; that the Emergency Order creates a presumption that the Order is correct, in contrast with the Tennessee statute in *Watts* that includes no such presumption; and that the Kentucky statute requires administrative appeal before review in the state court, in contrast to the Tennessee statute, which provided for immediate review in the Chancery Court.[6]

Despite these distinctions, the Kentucky statute adequately protects the policy interests the court identified in *Watts*. The Board's position is akin to that of judges or prosecutors, the potential for vexatious lawsuits is great, and sufficient safeguards exist to protect a physician's constitutional rights. *See id*. at 278 (quoting *Bettencourt*, 904 F.2d at 784 n.15).

---

[6] Tenn. Code Ann. § 4-5-322(a)(1) provides that review may be had immediately in the Chancery Court "if review of the final agency decision would not provide an adequate remedy."

## IV.  Conclusion

For the reasons discussed above, the individual members of the Board are entitled to quasi-judicial immunity.  The judgment of the district court is affirmed on alternative grounds.